LORD FORRES (ARCHIBALD WILLIAMSON), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SIR ROBERT BALFOUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALEXANDER B. WILLIAMSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN LAWSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THOMAS J. WHITSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40229–40233, 43972, 43973.    Promulgated January 13, 1932.

*Henry D. Costigan, Esq., J. M. Mannon, Jr., Esq., A. Crawford Greene, Esq.,* and *James D. Adams, Esq.,* for the petitioners.
*John D. Foley, Esq.,* for the respondent.

OPINION.

GOODRICH: The deductibility, by the several partners, of the liability for British income taxes of the partnership of Balfour, Guthrie & Company, is not different from the question previously considered and determined in *W. J. Burns et al.*, 12 B. T. A. 1209. Following that decision, we hold that the distributable share of the partnership income for the year 1923 of each of the petitioners herein (except John Lawson) should be reduced by his pro rata share of the British income taxes accrued against the partnership for that year and paid by it on December 5, 1927, as set out in our findings of fact.

We are not impressed with the argument made on behalf of petitioner Lawson that respondent's action in redetermining the net loss for the year 1922, claimed as a deduction from petitioner's income for the year 1923, results in the indirect assessment of a deficiency against him for the year 1922, now barred by the statute of limitations. The statute has not run as to 1923, and it is for that year that respondent seeks to impose a tax. In computing petitioner's taxable income for the year 1923, it is respondent's duty to consider and determine all items and elements thereof, including the net loss carried forward from the preceding year. He is not limited by the 1922 return in determining the correct amount of that loss as it may affect the deficiency for 1923. However, respondent has

reduced the net loss claimed for 1922 by $7,101.60 which, he estimates, was the amount of dividends received by Lawson from the Olympic Company. This amount is in excess of the dividends received by Lawson and should be corrected in accordance with our findings of fact.

The principal issue in the case presents greater difficulties. Respondent seeks to levy a tax upon dividends received by nonresident aliens from a foreign corporation. He acts under authority of sections 213 and 217 (a) (2) (B)[1], of the Revenue Acts of 1921 and 1924, the pertinent parts of which provide that there shall be included in the gross income of a nonresident alien individual the amount of dividends received from a foreign corporation, 50 per centum of whose gross income for three years prior to the date of declaration of such dividends was derived from sources within the United States. There is no ambiguity in the statute, and the record discloses, indeed, it is admitted, that these provisions clearly are applicable to these cases and that respondent has acted strictly in accordance therewith. But petitioners contend that these statutory provisions are unconstitutional and for that reason the taxes here charged are invalid. The Board will consider a question of constitutionality. *Independent Life Insurance Co. of America,* 17 B. T. A. 757; *Estate of Robert Todd Lincoln,* 24 B. T. A. 334.

Petitioners invoke the Fifth Amendment, which provides in part that no person shall be deprived of property without due process of law. They urge that the source of the dividends here sought to be taxed was in Great Britain, not in the United States, because the corporation paying these dividends was incorporated, controlled, and located in England, the stock certificates had their situs in England, the funds from which these dividends were paid were kept in England, the payments were there made and that, therefore, since petitioners were nonresident aliens in relation to the United States, the tax here sought to be imposed is arbitrary and unreasonable and amounts to a taking and confiscation of property without due process of law.

Beyond doubt, these petitioners, although nonresident aliens, may obtain the protection of the due process clause of the Fifth Amend-

---

[1] Sec. 213. (c) In the case of a nonresident alien individual, gross income means only the gross income from sources within the United States determined under the provisions of section 217.

Sec. 217. (a) That in the case of a nonresident alien individual * * * the following items of gross income shall be treated as income from sources within the United States:

*      *      *      *      *      *      *

(2) The amount received as dividends * * * (B) from a foreign corporation unless less than 50 per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends (or for such part of such period as the corporation has been in existence) was derived from sources within the United States as determined under the provisions of this section.

ment. See *Lem Moon Sing* v. *United States*, 158 U. S. 538; *Downes* v. *Bidwell*, 182 U. S. 244, and other cases therein cited.

The power of Congress to lay and collect taxes on incomes, from whatever source derived, is plenary under the Sixteenth Amendment to the Constitution. This power is not limited by the Fifth Amendment (see *McCray* v. *United States*, 195 U. S. 27; *Billings* v. *United States*, 232 U. S. 261; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1), unless so improperly enforced as to be deemed an unreasonable and arbitrary exercise of the taxing power amounting to a confiscation rather than a tax. *Nichols* v. *Coolidge*, 274 U. S. 531; *Blodgett* v. *Holden*, 275 U. S. 142; 276 U. S. 594; *Untermyer* v. *Anderson*, 276 U. S. 440.

Our attention is called to a number of cases arising under the Fourteenth Amendment to the effect that a tax by a State upon property or income wholly outside the State constitutes a denial of due process and is invalid. These cases are not controlling here, for we are not here concerned with the taxing power of a State, and the constitutional limitations imposed upon a State, in the exercise of that power, have no application to the Federal Government. *United States* v. *Bennett*, 232 U. S. 299.

Nor is the taxing power of the Federal Government in its sovereign capacity confined within the geographical limits of the United States. It may tax the income of a *citizen* even though the citizen receiving the income and the property from which it arises are both outside the territorial limits of the United States. *United States* v. *Bennett*, *supra; Cook* v. *Tait*, 265 U. S. 47. And it may tax the income from property within the United States owned by a nonresident alien. *DeGanay* v. *Lederer*, 250 U. S. 376.

But petitioners here contend that the income—that is, the dividends themselves,—the property from which it is derived, and the recipients thereof are all beyond the taxing power of the United States. That these elements are all beyond the territorial limits of the United States, seems clear. The tax here is sought to be levied not on the corporation, but on the stockholders. They are separate and distinct entities and their incomes are separate and distinct. *Eisner* v. *Macomber*, 252 U. S. 189. The earnings derived by the corporation from its properties within the United States were taken to England and commingled or invested with its general funds, which are the property of the corporation, not of the stockholders. From these funds or properties, all without the United States, the dividends were paid. Petitioners argue, therefore, that the source of the dividends was outside the United States, citing *DeGanay* v. *Lederer*, *supra; Eisner* v. *Macomber*, *supra; Standard Marine Insurance Co.*, 4 B. T. A. 853; *Estate of L. E. McKinnon*, 6 B. T. A. 412; *Ethel M. Codrington*, 6 B. T. A. 415. Neither the question of domicile of the

recipient nor situs of the property, or income arising therefrom, is here involved, for these petitioners are residents of England, the stocks are kept there, and the dividends there paid and received.

Do these extreme conditions remove this income beyond the taxing power of the United States as a sovereign? We think not. As we have stated, there is no ambiguity respecting the statute under which the tax here is levied. The intent and purpose of the Congress are clear and exact—it moved to lay a tax upon distributions by corporations to nonresident aliens of monies earned by such corporations in this country. It is clear that Congress regarded the source of such earnings as being within the United States, regardless of the manner in which they might be removed, invested or distributed by the corporations subsequent to the first acquisition thereof within this country. That view is not unreasonable. The commonly accepted definition of the term " source " is " that from which anything comes forth, regarded as its cause or origin, the first cause." Webster's New International Dictionary. In the case at bar it appears that the corporation's earnings coming from its properties within the United States were more than sufficient to provide for the dividends here in question. The corporation's earnings within this country were the first cause or origin—the " source "—of the subsequent dividends. It was the distribution of such earnings that Congress intended to tax for they were acquired within this country by the corporation under the protection which our laws afforded to its properties and operations. That such protection of the corporation inured to the benefit of its stockholders can not be denied. True, the corporation itself has in a measure paid for that protection by way of taxes upon its properties and earnings within this country. That much is demanded of every domestic corporation, unless specifically exempted. But the Government may go further, and does so by laying a second tax upon corporate distributions to individual recipients. In charging this tax against these nonresident aliens it is demanding no more than it demands of its own citizens, who have been benefited in their ownership of corporate stocks by the protection given to the properties and operations of the corporations themselves. In our opinion, therefore, the provisions of sections 213 and 217 of the Revenue Acts of 1921 and 1924 do not violate our Constitution. We see in these provisions no deprivation of property without due process of law, no unreasonable and arbitrary exercise of the taxing power such as is prohibited by the Fifth Amendment.

Petitioners question the expediency of this means of taxation from the view of international comity and suggest jurisdictional difficulties in the way of enforcement of the statutory provisions here involved. These difficulties are not determinative of the question of constitutionality and they do not concern us. The policy of this, or any

other form of taxation is for Congress to determine; the responsibility rests upon it, not on this Board nor the courts. Cf. concurring opinion, Bradley, J., in *United States* v. *Erie Ry. Co.*, 106 U. S. 327.

Petitioners' contention is denied, and the dividends received from the Olympic Company during the periods before us will be included in their respective individual taxable incomes as by statute provided.

Perhaps we should concede the possibility of an opposite view with respect to dividends paid by the corporation from earnings received from properties situate without the United States whose operations have received no protection and benefit from this country. But that is a matter of proof. The record discloses that the corporation's earnings from sources within the United States were more than sufficient to provide for the dividends it paid. It is quite possible for the corporation, or for the courts to accurately divide the earnings of the company and its investments of those earnings, the funds from which these dividends were paid, and, consequently, the dividends themselves, as between sources which the United States has protected and benefited and those which it has not. No such separation having been made, we must assume that the payments received by petitioners were made from sources properly taxable by the United States and refuse to hold the whole tax invalid because of the possibility of the failure of a part thereof.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL concurs in the result.

SEAWELL dissents.

TRAMMELL, dissenting: I believe that the statute is unconstitutional as being beyond the power of Congress under the Fifth Amendment.