FRANK W. ROSS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91107.    Promulgated April 1, 1941.

2

*Marion N. Fisher*, Esq., *Montgomery B. Angell*, Esq., and *Craddock M. Gilmour*, Esq., for the petitioner.

*Thomas H. Lewis, Jr.*, Esq., for the respondent.

4

8

OPINION.

BLACK: We shall consider the issues in the order of their statement. We think the primary issue is controlled by section 217 (a) (2) (B) of the Revenue Act of 1926, section 119 (a) (2) (B) of the Revenue Acts of 1928, 1932, and 1934, respectively, and by our decision in *Lord Forres*, 25 B. T. A. 154. The cited statutory provisions being substantially the same, we have set out in the margin only those of the 1934 Act.[1] To the extent that petitioner has received "dividends" from the Ross Corporation there can be no question as to the intent of Congress to tax such dividends. Section 211 (a) of the Revenue Act of 1934 provides that "In the case of a nonresident alien individual gross income includes only the gross income from sources within the United States." To the same effect see section 213 (c), Revenue Act of 1926, and section 212 (a), Revenue Acts of 1928 and 1932, respectively. See also sections 210 (b) and 211 (a), Revenue Act of 1926, and section 4 (d), Revenue Acts of 1928, 1932, and 1934, respectively.

In *Lord Forres, supra,* we held that such income as is involved in the instant proceeding was not beyond the taxing power of the United States as a sovereign. The only difference, which it seems to us is at all substantial, between the facts in the *Lord Forres* case and the facts in the instant proceeding is that in the *Lord Forres* case both the nonresident alien and the foreign corporation owned property in the United States, whereas in the instant proceeding, at the time of the hearing, neither the petitioner nor the Ross Corporation owned property of any value in the United States. It is our opinion that the difference in the facts between the two cases is one that concerns the collection of the tax rather than the determination of its legality, and, as we said in *Winterbottom Book Cloth Co., Ltd.,* 43 B. T. A. 572. "The Board is not concerned with the difficulties that may beset the Commissioner in collecting a deficiency in tax after redetermination. Our primary function is to determine the correct deficiency, if any, leaving to the Commissioner the enforcement or

---

[1] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

(a) GROSS INCOME FROM SOURCES IN UNITED STATES.—The following items of gross income shall be treated as income from sources within the United States:

  *    *    *    *    *

(2) DIVIDENDS.—The amount received as dividends—

  *    *    *    *    *

(B) from a foreign corporation unless less than 50 per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends (or for such part of such period as the corporation has been in existence) was derived from sources within the United States as determined under the provisions of this section; but dividends from a foreign corporation shall, for the purposes of section 131 (relating to foreign tax credit), be treated as income from sources without the United States.

collection thereof." In view of our holding in the *Lord Forres* case, we think this issue must be decided against petitioner.

In *Lord Forres*, *supra*, in the concluding paragraph of our opinion, among other things, we said:

Perhaps we should concede the possibility of an opposite view with respect to dividends paid by the corporation from earnings received from properties situate without the United States whose operations have received no protection and benefit from this country. But that is a matter of proof. The record discloses that the corporation's earnings from sources within the United States were more than sufficient to provide for the dividends it paid. * * *

As will be seen later on in the course of this opinion, we are holding that petitioner is taxable on dividends received from the Ross Corporation in the amount of $19,911.88 in 1926 and on dividends received in 1935 in the amount of $163,966.57. As to all other years involved we are holding that petitioner did not receive any dividends from the Ross Corporation, and, therefore, there are no deficiencies and no penalties for those years.

Exhibit K, which is a part of the record in this case and has been incorporated by reference as a part of our findings of fact, shows that at the time the 1926 and 1935 dividends were paid the Ross Corporation's earnings from sources within the United States were far in excess of the amounts of the dividends paid. Thus the situation in that respect is the same as it was in the *Lord Forres* case and what we said there has equal application here.

We shall now consider to what extent petitioner received "dividends" from the Ross Corporation during the years 1925 to 1935, inclusive. The facts show and petitioner concedes that on March 1, 1926, he received from the Ross Corporation a dividend in Canadian dollars amounting to $19,996. In addition to this admitted dividend petitioner during the years 1925 to 1935, inclusive, received from the Ross Corporation payments in Canadian dollars amounting to $1,452,783.46. Of this amount $900,500 received during 1925 to 1929, inclusive, was treated by both the petitioner and the Ross Corporation, together with $60,000 received in 1922, a year not before us, as representing a complete liquidation of the note for $960,500 which the Ross Corporation issued to petitioner in part consideration for the securities transferred to the corporation by petitioner in accordance with the April 27, 1922, agreement. The $386,400 received during 1930 to 1935, inclusive, was treated by both the petitioner and the Ross Corporation as representing a complete liquidation of the $386,400 purchase price of stocks and bonds transferred to the corporation by petitioner in accordance with the December 18, 1922, resolution. Petitioner contends that these two amounts of $900,500 and $386,400 must be held by the Board to constitute repayments of indebtedness by the corporation and

not the receipt of dividends by petitioner, as the respondent contends. Petitioner concedes that the balance of the $1,452,783.46 payments, amounting to $165,883.46 in Canadian dollars received in 1935, should be regarded as a dividend received by petitioner in that year from the Ross Corporation.

The respondent, in contending that the two amounts of $900,500 and $386,400 must also be regarded as dividends, does not contend that the separate entities of petitioner and the Ross Corporation should be disregarded. In his brief he sums up his argument on this issue as follows:

* * * It is not so much that the separateness of the corporate entity is to be ignored as that the form of the transaction with that corporation must be ignored and its substance given effect. * * * All the evidence in this case points with almost unescapable certainty to the conclusion that Ross Corporation was the petitioner's *alter ego:* one of his "two pockets". The supposed agreements of sale were nothing more than formal devices adopted for the purpose of facilitating shifting from one pocket to another. They should be ignored.

In other words, the respondent would have us hold that the two transactions in 1922 whereby petitioner transferred securities to the corporation in consideration for 20,000 shares of stock, a note for $960,500, and an open account for $386,400 to petitioner's credit, should be regarded as if petitioner merely transferred the securities in consideration for the shares of stock. We see no justification for such a holding. The facts do not support respondent's contention that the $960,500 and $386,400 in question represented "Nothing more than formal devices adopted for the purpose of facilitating shifting from one pocket to another." On the contrary, the evidence fully supports petitioner's contention that the amounts in question represented bona fide indebtedness owed to petitioner by the Ross Corporation. We think we must so treat it in the disposition of these proceedings.

Petitioner's counsel, who acted for him in the forming of the Ross Corporation, testified that he was entirely unfamiliar with section 119 (a) (2) (B) of the Revenue Act of 1934 and similar provisions of earlier acts until April 23, 1937, when petitioner was first notified by the respondent of the proposed tax liability. This, it would seem, makes it unlikely that the manner in which petitioner organized the Ross Corporation by transferring securities to it in part consideration for capital stock and in part consideration for a note and an open account, and the later payment by the corporation to the petitioner of the corporation's indebtedness to petitioner, was in any way done with a view of avoiding any United States tax liability. If any doubt exists as to the correctness of such a statement, it seems that it would be dispelled by the recognition of the fact that if at

any time petitioner had known of the provisions of section 119 (a) (2) (B) of the Revenue Act of 1934 or similar provisions of earlier acts he could have avoided their application entirely simply by transferring a sufficient amount of Canadian securities to the Ross Corporation so that the latter's gross income derived from sources within the United States would have been less than 50 percent of its gross income from all sources. The evidence shows that the gross income of the Ross Corporation from sources within the United States for all of the periods involved was only slightly over 50 percent, and that petitioner individually owned at all times large amounts of income-producing Canadian securities which he could easily have sold or transferred to the corporation.

After a careful consideration of the entire record, we are of the opinion and have so found as an ultimate fact as to this issue, that all payments received by petitioner from the Ross Corporation during the years 1925 to 1935, inclusive, with the exception of the dividend of $19,996 (Canadian money) in 1926 and payments aggregating $165,883.46 (Canadian money) in 1935, constituted payments in discharge of legal and binding obligations of Ross Corporation to petitioner instead of dividends. *Carl G. Fisher*, 7 B. T. A. 968; *Herff & Dittmar Land Co.*, 32 B. T. A. 349. Cf. *Curran* v. *Commissioner*, 49 Fed. (2d) 129. It follows that there are no deficiencies and no penalties due for the years 1925 and 1927 to 1934, inclusive.

In view of our holding in connection with the previous issue, the remaining issues are material only in so far as they affect the years 1926 and 1935.

To what extent, if any, should the 25 percent delinquency penalties be imposed for the years 1926 and 1935?

Since no return was filed for the year 1926, the imposition of the 25 percent penalty for that year is mandatory. Section 3176 of the Revised Statutes, as amended by section 1103 of the Revenue Act of 1926; *Douglas L. Edmonds, Administrator*, 31 B. T. A. 962; affd., 90 Fed. (2d) 14; certiorari denied, 302 U. S. 713; *Axel Holmstrom*, 35 B. T. A. 1092; *Theodore R. Plunkett*, 41 B. T. A. 700, 710; *Vahram Chimchirian*, 42 B. T. A. 1437.

The question as to whether the 25 percent penalty should be added for the year 1935 is presented under somewhat different circumstances, but we think the result must be the same. The applicable statutory provision is section 291 of the Revenue Act of 1934.[2] The respondent

---

[2] SEC. 291. FAILURE TO FILE RETURN.

In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect no such addition shall be made to the tax. * * *

contends that we should regard the year 1935 as if no return had been filed, in which event the imposition of the penalty would likewise be mandatory. Petitioner contends, however, that we can not ignore the return filed on or about January 20, 1940; that this return must be regarded as a delinquent return; that the evidence shows that the failure to file the return on time was due to reasonable cause and not due to willful neglect; and that, therefore, no penalty should attach.

Petitioner's return for the year 1935 was due to be filed on or before June 15, 1936. Sec. 216, Revenue Act of 1934. No return was filed by petitioner for the year 1935 until on or about January 20, 1940, which was after the respondent on August 5, 1937, had made his determination of the deficiency for that year and after petitioner had on October 26, 1937, filed his petition with this Board and respondent had filed his answer thereto. Since January 20, 1940, is more than 150 days after June 15, 1936, section 406 of the Revenue Act of 1935 has no application here. On January 26, 1940, petitioner filed a motion for leave to file an amendment to his petition, in which amendment additional facts were alleged relating to the filing of the 1935 return. This motion was granted on January 29, 1940. In *Taylor Securities, Inc.*, 40 B. T. A. 696, we held that returns filed after the respondent had made his determination of deficiencies were insufficient to relieve the petitioner thereof the mandatory operation of the statutory provisions imposing the 25 percent penalty.

In *Theodore R. Plunkett, supra*, we said:

\* \* \* The purported income tax return of the petitioner for 1934 mailed by the petitioner from Adams, Massachusetts, on March 15, 1935, was not a return required by the statute. It was no return at all. The first return which was filed was filed on October 10, 1938. That return was filed after all pleadings in this case had been filed and issue joined. It was filed too late to avoid the attachment of the penalty. *Taylor Securities, Inc., supra.*

The action of the respondent in adding to the tax the 25 percent penalty for delinquency is approved.

Following the foregoing decisions, the Commissioner's action in determining a delinquency penalty of 25 percent against petitioner for the year 1935 is approved.

Even if we are in error in treating the return filed by petitioner on January 20, 1940, long after issue had been joined by the parties, as "no return" within the meaning of section 291, *supra*, and assuming that we should treat the return in question as a "delinquent return" within the meaning of that section, nevertheless, we think the result would be the same. The burden of proof would be on petitioner to show that his failure to file his return for the year 1935 at the time it was required by law was due to reasonable cause and not due to willful neglect. Petitioner has not made such a showing. All that he has proved in that respect is that he was

ignorant of the law which imposed such a tax and, therefore, filed no return under it. While that sort of a showing doubtless absolves him from "willful" neglect, it does not constitute "reasonable cause." See *Charles E. Pearsall & Son*, 29 B. T. A. 747; *Rafael Sabatini*, 32 B. T. A. 705; affd., 98 Fed. (2d) 753; *Berlin* v. *Commissioner*, 59 Fed. (2d) 996.

Is petitioner entitled to a credit for dividends received in computing his income subject to normal tax for the years 1926 and 1935, respectively? In his deficiency notice, the respondent did not determine any "normal tax" liability against petitioner for any year, but confined his determination to one of "surtax" liability. In his third amended answer to the petition as amended, the respondent affirmatively alleged "that in his deficiency notice he allowed as credits against net income for normal tax purposes the amount received as dividends in each of the years involved; the allowance of such credits was erroneous." Section 216 of the Revenue Act of 1926, in so far as material herein, provides as follows:

SEC. 216. For the purpose of the normal tax only there shall be allowed the following credits:

(a) The amount received as dividends * * * (2) from a foreign corporation when it is shown to the satisfaction of the Commissioner that more than 50 per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends (or for such part of such period as the corporation has been in existence) was derived from sources within the United States as determined under the provisions of section 217.

Section 217 (g) (1) of the Revenue Act of 1926, in so far as material herein, provides as follows:

Except as provided in paragraph (2) a nonresident alien individual * * * shall receive the benefit of the deductions and *credits* allowed in this title *only* by filing or causing to be filed with the collector a true and accurate return of his total income received from all sources in the United States, in the manner prescribed in this title; including therein all the information which the Commissioner may deem necessary for the calculation of such deductions and *credits*. [Italics supplied.]

Petitioner did not file any return for the year 1926. In view of the plain provisions of section 217 (g) (1), *supra*, it follows that, in computing the normal tax for the year 1926, petitioner is not entitled to any credit for dividends received from a foreign corporation which would otherwise be allowable under section 216 (a) (2), *supra*.

Relative to the year 1935, it is sufficient to note that the Revenue Act of 1934, for the purpose of the normal tax, does not allow any credit for dividends from foreign corporations as does section 216 (a) (2) of the Revenue Act of 1926 and section 25 (a) (2) of the

Revenue Acts of 1928 and 1932, respectively. See sec. 25, Revenue Act of 1934. It follows that, in computing the normal tax for the year 1935, petitioner is not entitled to any credit for dividends received from a foreign corporation.

The final issue is whether that portion of the amounts received by petitioner from the Ross Corporation in 1926 and 1935, which we have under a previous issue held to be dividends, should be included in petitioner's income in terms of United States money at the rate of exchange existing at the time of receipt or at the rate existing at the end of the year. The payments which the respondent included in petitioner's income were included by him in terms of Canadian dollars, which was erroneous. The respondent's ruling O. D. 419, Cumulative Bulletin No. 2, p. 60, which we think correctly interprets the law, provides in full as follows:

> Income returnable for the purpose of Federal taxes should be expressed in terms of United States money. The rate of exchange at the time of receipt governs in making the computation.

We hold as to this issue that the portion of the amounts received in Canadian dollars by petitioner in 1926 and 1935 which we have held to be dividends should be expressed in terms of United States money at the rate of exchange in force at the time of receipt. Upon this basis petitioner is taxable on dividends received in 1926 in the amount of $19,911.88 and on dividends received in 1935 in the amount of $163,966.57.

The deficiencies and penalties for the years 1926 and 1935 should be recomputed in accordance with this report. There are no deficiencies and no penalties for the years 1925 and 1927 to 1934, inclusive.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Leech, dissenting: I disagree with the conclusion of the majority on the first issue. This issue, decisive of the controversy, is disposed of wholly without discussion of the facts or the principles involved, upon the assertion that it is controlled by the decision of the Board in the *Lord Forres* case, 25 B. T. A. 154. This conclusion is predicated upon a statement that the facts in the two cases are identical with one exception which is said to be immaterial. I think the record convincingly discloses that the facts in the two cases are radically different and that the *Forres* case is not controlling here.

In the years 1925 to 1935, inclusive, the Ross Corporation made payments in large amounts from its bank balances in Canada to petitioner. Respondent contends these payments were, in substance,

dividends from a foreign corporation. Upon this premise the disputed deficiencies and penalties were determined by taxing such "dividends" to petitioner as "income from sources within the United States" under the definition quoted in section 119 (a) (2) (B) of the Revenue Act of 1934[1] and similar provisions in the prior applicable revenue acts.[2]

Petitioner contests the validity of the proposed assessments upon several counts. His primary position is that the United States is without jurisdiction to tax him, a nonresident citizen of a foreign country, upon his receipt of income from a foreign corporation, taking place in a foreign country, the United States having no jurisdiction of his person or property.

Respondent argues that this contention confuses the power of the Government to impose the tax with its power to enforce payment. It is then said that it is the existence of the latter power, only, that is here subject to question, which thus requires us to redetermine the deficiencies by literal application of the statute, even though their collection be impossible. I agree that mere apparent inability to collect the tax would not affect the liability to pay it with which liability, alone, we can be concerned.

But here, contrary to the view of the majority, I think the primary question is whether the statutory provisions, *supra*, in so far as they affect the taxpayer here, were within the legislative jurisdiction of the Government. If such jurisdiction was lacking, then the liability falls with the statutory authority supporting it. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Rose* v. *Himely*, 4 Cranch, 241; *The Appollon*, 9 Wheat. 362; *St. Louis* v. *Ferry Co.*, 11 Wall. 423; *Dewey* v. *Des Moines*, 173 U. S. 193; *Whitney* v. *Commissioners of Inland Revenue*, A. C. 37; *City of New York* v. *McLean*, 170 N. Y. 374; 63 N. E. 380. The Supreme Court thus states the rule in *St. Louis* v. *Ferry Co., supra:*

Where there is jurisdiction neither as to person nor property, the imposition of a tax would be *ultra vires* and void. If the legislature of a State should enact that the citizens or property of another State or country should be taxed in the

---

[1] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

(a) GROSS INCOME FROM SOURCES IN UNITED STATES.—The following items of gross income shall be treated as income from sources within the United States:

(2) DIVIDENDS.—The amount received as dividends—

(B) from a foreign corporation unless less than 50 per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends (or for such part of such period as the corporation has been in existence) was derived from sources within the United States as determined under the provisions of this section; but dividends from a foreign corporation shall, for the purposes of section 131 (relating to foreign tax credit), be treated as income from sources without the United States;

\*      \*      \*      \*      \*      \*      \*

[2] Sec. 119 (a) (2) (B), Revenue Act of 1932; sec. 119 (a) (2) (B), Revenue Act of 1928; sec. 217 (a) (2) (B), Revenue Act of 1926.

same manner as the persons and property within its own limits and subject to its authority, or in any other manner whatsoever, such a law would be as much a nullity as if in conflict with the most explicit constitutional inhibition. Jurisdiction is as necessary to valid legislative as to valid judicial action.

In *Dewey* v. *Des Moines, supra*, the rule is again applied. In that case, Dewey, a citizen and resident of Illinois, filed a petition in the State Court of Iowa to have certain paving assessments on his lots in Des Moines set aside and to obtain an injunction enjoining any proceedings for the sale of such property and for a judgment that there was no personal liability upon him to pay the excess of the assessment over the amount realized upon the sale. The contractor who did the paving work, who was made a party to the proceeding, counterclaimed for a foreclosure of his lien upon the lots and for a personal judgment against Dewey. Under the statutes of Iowa the lot owner was made personally liable for the assessment. The Supreme Court specifically held that a state, in exercising its sovereign power of taxation, could not by legislation impose a personal liability upon a citizen and resident of another state for taxes on property located within the state, and that the imposition of such a liability constituted a violation of the due process clause of the Constitution. The Court stated:

* * * This plaintiff was at all times a non-resident of that State, and we think that a statute authorizing an assessment to be levied upon property for a local improvement, and imposing upon the lot owner, who is a non-resident of the State, a personal liability to pay such assessment, is a statute which the State has no power to enact, and which cannot therefore furnish any foundation for a personal claim against such non-resident. There is no course of reasoning as to the character of an assessment upon lots for a local improvement by which it can be shown that any jurisdiction to collect the assessment personally from a non-resident can exist. The State may provide for the sale of the property upon which the assessment is laid, but it cannot under any guise or pretense proceed farther and impose a personal liability upon a non-resident to pay the assessment or any part of it. To enforce an assessment of such a nature against a non-resident, so far as his personal liability is concerned, would amount to the taking of property without due process of law, and would be a violation of the Federal Constitution.

However, the limits of legislative jurisdiction, in our Constitution, have been clearly defined. Chief Justice Marshall, in *Rose* v. *Himely, supra;* said:

It is conceded that the legislation of every country is territorial; that beyond its own territory, it can only affect its own subjects or citizens.

*St. Louis* v. *Ferry Co., supra; The Apollon, supra; Dewey v. Des Moines, supra; Shaffer* v. *Carter*, 252 U. S. 37; Prof. Beale, Conflict of Laws, § 74.1; *Whitney* v. *Commissioners of Inland Revenue, supra;* Prof. Beale, 32 Harv. L. R. 587, 589–90; Black on Judgments, vol. 1, 2d Ed. § 227; Cooley on Taxation, 4th Ed., vol. 3, § 1333.

These cases, and others, disclose the premises of those limitations. In *Shaffer* v. *Carter*, *supra*, the Supreme Court thus states:

* * * Governmental jurisdiction in matters of taxation, as in the exercise of the judicial function, depends upon the power to enforce the mandate of the State by action taken within its borders, either *in personam* or *in rem* according to the circumstances of the case, as by arrest of the person, seizure of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like; and the jurisdiction to act remains even though all permissible measures be not resorted to. * * *

The question as presented here seems to be novel. I can not find, nor has my attention been called to, any decision in point on the present facts. Though the taxpayer is a citizen and resident of Canada, he is entitled to the protection of the due process clause of the Fifth Amendment to the Constitution. See *Lem Moon Sing* v. *United States*, 158 U. S. 538; *Downes* v. *Bidwell*, 182 U. S. 244, and other cases therein cited. Thus if the United States had no such jurisdiction as to the taxpayer, either *in personam* or *in rem*, then the quoted statute and its prototypes in so far as they authorize the determination of the contested deficiencies against this taxpayer, fall, because violative, in such instances, of the Fifth Amendment to the Constitution. *Dewey* v. *Des Moines*, *supra*. And, if neither essential factual premise for legislative jurisdiction existed when the distributions occurred upon which the contested liabilities are said to have arisen, neither personal protests of the taxpayer to the respondent nor his appearance in this proceeding to contest the validity of those liabilities could retroactively supply the necessary original jurisdictional prerequisites and reinstate a liability which never existed. *Shaffer* v. *Carter*, *supra; Dewey* v. *Des Moines*, *supra; City of New York* v. *McLean*, *supra*.

Petitioner is and always has been a nonresident alien, a citizen and resident of the Province of Quebec, Canada. He has never resided in or carried on business in the United States and during all the period here involved has owned no property, real or personal, in the United States. Since its incorporation in 1922 he has owned all of the issued capital stock, except four qualifying shares, of the Ross Corporation, a Canadian corporation with its place of business in Canada, which has carried on no business in the United States. From 1922 to 1935, Ross Corporation owned certain stocks and bonds of corporations organized under the laws of the United States or the states or territories thereof and in each of those years the dividend and interest income it received therefrom constituted more than 50 percent of its gross income from all sources.

These earnings of the United States corporations, produced under the protection of the laws of the United States and while yet in this

country, were distributed in dividends and interest to the Ross Corporation. The source to that corporation of these dividends and interest was the United States. Thus at the time of their distribution from that source, when they represented credits due this foreign corporation, these earnings were within the jurisdiction of this country and subject to the exercise of its power to tax. The imposition of an income tax on such nonresident foreign recipient has been recognized as in the nature of the garnishment of a credit due it from the domestic corporation. The presence in the United States of the obligor or the obligee of that credit is said to support jurisdiction for the imposition of the tax. As stated by the Circuit Court of Appeals for the Second Circuit, in *Commissioner* v. *Nevius*, 76 Fed. (2d) 109 (certiorari denied, 296 U. S. 591) : "The United States has jurisdiction to tax when it can lay hold of either the obligor or the obligee of a chose in action. In the case of shares of stock, the corporation is the obligor." This jurisdiction in the United States over the payment on account of this credit existed at the time of its receipt by the foreign corporation, and the payment was thus received burdened with this obligation. *De Ganay* v. *Lederer*, 250 U. S. 376; *Burnet* v. *Brooks*, 288 U. S. 378; *Commissioner* v. *Nevius, supra; Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60.

This same basis of jurisdiction, I think, was present in *Lord Forres, supra*, upon which case, alone, the conclusion of the majority on the first issue is supported. But the question of jurisdiction raised here was not and could not have been raised on the facts revealed in that case.

The majority says that "The only difference between the facts in the *Lord Forres* case and the facts in the instant proceeding is that in the *Lord Forres* case both the nonresident alien and the foreign corporation owned property in the United States, whereas in the instant proceeding, at the time of the hearing, neither the petitioner nor the Ross Corporation owned property of any value in the United States." Then follows their conclusion that this difference is insufficient to distinguish the two cases. I think that difference is important and may be sufficient, in itself, to afford a basis of jurisdiction *in rem* on the facts in the *Lord Forres* case which is wholly absent here. See *Shaffer* v. *Carter, supra; Scottish Union & National Insurance Co.* v. *Boland*, 196 U. S. 611; *Nickey* v. *Mississippi*, 292 U. S. 393.

That basis would, of course, not support the imposition of a judgment *in personam*, to which, I think, the Board is limited by statute. But that question became moot in the *Lord Forres* case since there the petitioner ceased, in effect, to be a nonresident alien by bringing himself personally under the jurisdiction of the United States. In that case the petitioner was and had been for some years a member

of a domestic partnership, actively carrying on a business under the protection of the laws of the United States. The petitioner had filed an income tax return to this Government, including only his share of that partnership income. He was contesting before the Board a deficiency in the tax on the income so returned. Jurisdiction to impose a personal judgment therefore existed in fact.

But, beyond that, the records in these two cases definitely disclose other and even more important factual differences. These can not, so easily, be ignored. The question presented to the Board in the *Lord Forres* case was whether, in addition to certain items of partnership income, the return should also have included dividends distributed to Forres from its earnings by a domesticated foreign corporation in which Forres was a stockholder. This fact most strikingly differentiates the *Lord Forres* case from that under discussion. The distributed earnings in question in the *Lord Forres* case were those of the Olympic Portland Cement Co., Ltd., from its cement business actually and actively carried on in the United States. Forres was a stockholder in that corporation. The earnings from which the taxed distributions were declared and paid were subject to the jurisdiction of the United States as and when there earned under the protection of its laws. When the contested dividends from those earnings were declared to Forres and the other shareholders, these dividends constituted choses in action or credits due Forres from a corporation over both the person and property of which this country then had jurisdiction. *Commissioner* v. *Nevius, supra.*

Here, the Ross Corporation was not in business in the United States. It was that corporation and not the petitioner, its shareholder, which owned the stock and bonds in the United States corporations, the earnings of which arose under the protection of the United States. In short, Lord Forres occupied exactly the same status in reference to the taxed income there that the Ross Corporation occupies here. The basis for jurisdiction to tax upon that status was exhausted when that corporation received the distribution of these earnings and removed them from the jurisdiction of the United States to Canada with no liabilities against such earnings other than those it has already admitted and paid.

However, respondent askes that we go further than the *Lord Forres* case. His position is not predicated upon the disregard of the entity of the Ross Corporation as separate from its shareholders. Indeed that entity must be recognized here. *Rhode Island Trust Co.* v. *Doughton*, 270 U. S. 69. Under Canadian law, found as a fact, it is so recognized. Respondent has already recognized and taxed it as such. Its recognition is implicit even in the statutory provision under which the present taxes were determined.

The position of the respondent is that, because the origin of the earnings with which the dividends and the interest on the stocks and bonds owned by the Ross Corporation were paid was in the United States, they were then subject to the jurisdiction of the United States. It is then argued that, as a condition precedent to the removal of that income from this country, the United States had the jurisdiction to and in the statutes under consideration did attach to such income the condition that if and when, at any time in the future, this Canadian corporate recipient later distributed this income in Canada to this petitioning Canadian stockholder, such stockholder took it with the obligation to pay this additional tax. Counsel for respondent epitomized his argument thus: "The power to tax this income when it comes into the hands of the stockholder flows not from any disregard, as I have said, of the corporate entity, but from the power of the Sovereign to control the future course of that which originates within its borders."

No authority is cited and I can find none supporting such a theory. In my judgment, this country can not project its tax laws beyond its territorial limits and thus create liabilities against foreign citizens to the United States as a result of transactions taking place in a foreign country, merely upon the ground that the subject matter of the tax, in some prior period, originated in the United States. The Ross Corporation could not obligate its shareholders. *Vermont Loan & Trust, Co.* v. *Gillis*, 282 U. S. 796. Extraterritorial jurisdiction of the United States extends only to its citizens, since, as such, they alone receive the benefit of the protection of this country when resident in a foreign country. *Rose* v. *Himely, supra; The Apollon, supra; Cook* v. *Tait*, 265 U. S. 47.

Two recent decisions by the Supreme Court sustain that view. Both have to do with the taxing power of the state under the prohibition of the Fourteenth Amendment, but are, of course, in point here in determining the legislative jurisdiction of the Federal Government to lay a tax under the corresponding prohibition of the Fifth Amendment. The first case, *Connecticut General Co.* v. *Johnson*, 303 U. S. 80, denied the jurisdiction of the State of California to tax transactions by a foreign corporation taking place outside the state, although the corporation was licensed to do business in the state and the transactions were in connection with matters which had their origin there. The Court there said:

But the limits of the state's legislative jurisdiction to tax, prescribed by the Fourteenth Amendment, are to be ascertained by reference to the incidence of the tax upon its objects rather than the ultimate thrust of the economic benefits and burdens of transactions within the state. As a matter of convenience and certainty, and to secure a practically just operation of the con-

stitutional prohibition, we look to the state power to control the objects of the tax as marking the boundaries of the power to lay it. Hence it is that a state which controls the property and activities within its boundaries of a foreign corportion admitted to do business there may tax them. But the due process clause denies to the state power to tax or regulate the corporation's property and activities elsewhere. * * *

In the second case, *Wisconsin* v. *Penney Co.*, 311 U. S. 435, the Supreme Court of Wisconsin, on authority of *Connecticut General Co.* v. *Johnson*, *supra*, held a statute of that state in contravention of the Fourteenth Amendment in imposing a tax upon foreign corporations for the privilege of receiving and distributing dividends representing earnings derived from business carried on under license within the state. In reversing this decision and sustaining the validity of the statute the Supreme Court of the United States held the tax to be in effect an additional income tax laid on the foreign corporation which produced the income in Wisconsin and under the protection of its laws, the collection being merely delayed until the time of distribution of the income.

A reading of these cases, together with the dissent in the latter, I think, discloses that the contested legislation in the *Penney* case would not have been a constitutional exercise of the taxing power of the state if the tax had been imposed upon the shareholder and not the corporation.

Here the income tax is laid directly upon the stockholder and not the corporation and therefore is under the ban of that reasoning. This liability can not be held to be an income tax imposed upon earnings as and when derived in this country, and its collection merely deferred until distribution, as in the *Penney* case. This tax, a personal liability, is imposed by the statute upon that individual who, by reason of his ownership of the stock at the time of the taxed distribution, is in receipt of that distribution. Who that individual may be, is unknown until after the earnings have passed beyond the jurisdiction of the United States and, in the present case, happens to be a nonresident alien, carrying on no business and owning no property in the United States.

The title of the relevant provision in the 1934, 1932, and 1928 Revenue Acts is "Income from Sources Within United States."[3] However, despite that title, it will be noted that the tax which the acts in question seek to impose is not alone upon income as defined in that title, but upon the total distribution of income by the foreign corporation to a stockholder, *irrespective of the source from which it was derived*, if in the year of distribution, 50 percent or more of the net income of the

---

[3] The title of the relevant provision in the 1926 Act is "Net Income of Nonresident Alien Individuals."

foreign corporation for the prior three years was derived from sources within the United States.

Petitioner is and always has been a nonresident alien. He has never carried on any business in the United States and, during all the years in review here, has owned no property in this country.

When the earnings of the United States corporations, which arose from sources in this country, were paid to the Ross Corporation, those earnings then lost their character as from those sources and became a part of the surplus in Canada of the Canadian corporation. They were thereafter used, not in the United States, but in Canada, to which country its business was limited. But no liabilities are said by the statutes to have arisen until the alleged dividend distributions by the Canadian corporation to the Canadian stockholder occurred. At that time the Canadian corporation was in possession, in Canada, of the payments from the United States corporations. Any credit or chose in action in favor of the petitioner, which thereafter arose because of that income, existed therefore only within the jurisdiction of Canada—not the United States. And neither the obligor nor obligee therein was within the jurisdiction of this country. See *Commissioner* v. *Nevius, supra.*

The taxpayer owned only stock in the Canadian corporation, the situs of which stock was Canada. *Corry* v. *Baltimore*, 196 U. S. 466. The distributions taxed here as dividends, if such, were those of the Canadian corporation from its surplus. The actual source of those distributions as to petitioner was Canada—not the United States. That source can not be changed merely by what I think is an arbitrary statutory definition. *Rhode Island Trust Co.* v. *Doughton, supra.*

I think that section 119 (a) (2) (B) of the Revenue Act of 1934, and parallel sections of the earlier revenue acts, were ineffective in so far as they authorize the imposition of the contested liabilities, and that the deficiencies fall with the authority supporting their determination.

HARRON agrees with this dissent.