CENTRAL AGUIRRE SUGAR Co., peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado.

Núm. 10.—*Sometido:* Noviembre 6, 1944. *Resuelto:* Diciembre 8, 1944.

*Hartzell, Kelley & Hartzell, Rafael O. Fernández y José L. Novas,* abogados de la peticionaria; *Hon. Procurador General Interino Jesús A. González y Ramón Gandía Biscombe, Oficial Jurídico,* abogados del Interventor, Tesorero de Puerto Rico; *James R. Beverley, R. Castro Fernández y José López Baralt,* .como *amicus curiae.*

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos esenciales de este caso, sobre los cuales no existe controversia entre las partes, son en síntesis los siguientes:

Central Aguirre Sugar Company es una corporación organizada de acuerdo con las leyes de Puerto Rico y tiene su oficina principal en Aguirre, Municipalidad de Salinas, en esta Isla. El accionista principal de dicha corporación lo es, según se alega, Central Aguirre Associates, una asociación o "trust" de Massachusetts, con su oficina principal en la ciudad de Boston, y sin oficina o negocios en Puerto Rico.

En julio 15 de 1940, la corporación aquí peticionaria pagó a sus accionistas, como dividendos, un total de $1,620,000. De esa suma, $1,619,856 fueron pagados a Central Aguirre Associates.

En o alrededor de enero 15, 1941, Central Aguirre Associates radicó con el Tesorero de Puerto Rico una planilla de contribución sobre ingresos, de acuerdo con la ley entonces vigente, e incluyó en dicha planilla los ingresos brutos procedentes de fuentes dentro de Puerto Rico y entre ellos la

suma recibida de la corporación peticionaria por concepto de dividendos. De dicha planilla no resultaba ingreso neto alguno de Central Aguirre Associates que estuviera sujeto a contribución de acuerdo con la ley entonces vigente. (Sec. 32(a) (6) Ley de Contribuciones sobre Ingresos de 1924.)

En marzo 15, 1941, la corporación peticionaria radicó su planilla de contribución sobre ingresos, en la cual hizo constar la cantidad pagada como dividendos durante el año natural de 1940, incluyendo la suma pagada a Central Aguirre Associates, pero sin hacer constar deducción y retención de cantidad alguna como contribución imponible a dicha asociación o "trust" de Massachusetts.

Con fecha 22 de noviembre de 1941, el Tesorero de Puerto Rico notificó y requirió a la peticionaria Central Aguirre Sugar Company para que pagase dentro de los diez días siguientes al de la notificación, la suma de $307,772.64, con intereses al tipo de 1 por ciento desde agosto 11 de 1941, alegando que la peticionaria era deudora de dicha suma al Tesoro Insular de acuerdo con las disposiciones de la Ley núm. 74 de agosto 6 de 1925 (pág. 401), según fué enmendada por la Ley núm. 31 de abril 12 de 1941 ((1) pág. 479), y por la Ley núm. 159 de mayo 13 de 1941 ((1) pág. 973), de la Legislatura de Puerto Rico, como contribución sobre ingresos retenida en el origen por la peticionaria, al tipo de 19 por ciento, con respecto al dividendo pagado por la peticionaria en 1940 a su accionista Central Aguirre Associates. Solicitada dentro del término de diez días la reconsideración y revocación de la "Notificación y Requerimiento" hechos por el Tesorero, éste declaró no haber lugar a la reconsideración y confirmó su resolución por carta de fecha diciembre 10 de 1941. El día 20 del mismo mes y año, la peticionaria radicó una querella ante el Tribunal de Apelación de Contribuciones. El caso fué visto y quedó sometido a dicho tribunal en diciembre 8, 1942. En agosto 17 de 1943 el caso fué sometido de nuevo al Tribunal de Contribuciones de

Puerto Rico, y éste en mayo 11 de 1944 rindió su decisión desestimando la querella. La peticionaria pagó bajo protesta la suma total reclamada por el Tesorero y radicó ante esta Corte Suprema su petición de *certiorari*.

■■ El error fundamental que la peticionaria imputa al Tribunal recurrido es el de haber resuelto que de acuerdo con los términos de la Ley núm. 31 de abril 12, 1941 y de la Ley núm. 159 de mayo 13 de 1941, que entró en vigor en agosto 11, 1941 con efecto retroactivo al día 1 de enero de 1940, la peticionaria estaba obligada a retener y pagar al Tesoro de Puerto Rico una contribución sobre los dividendos pagados por la peticionaria a Central Aguirre Associates el día 15 de julio de 1940, cuando los dividendos así pagados no estaban sujetos a contribución alguna bajo la ley entonces en vigor.

La sección 22, subdivisión (*a*) de la "Ley de Contribuciones Sobre Ingresos de 1924", enmendada por la Ley núm. 102 de mayo 14, 1936 (Comp. de los Estatutos Revisados de 1941, pág. 423) vigente en julio 15 de 1940, fecha en que se efectuó el pago de los dividendos en cuestión, disponía que todas las personas, cualquiera que sea la capacidad en que actúen, que tengan el control, custodia, disposición o pago de intereses, rentas, sueldos, comisiones, compensaciones u otras ganancias, beneficios e ingresos anuales o periódicos, de cualquier individuo no residente que no sea ciudadano de Puerto Rico o de cualquier sociedad no dedicada a la industria o comercio en Puerto Rico, "*excepto ingreso recibido como dividendos de los admitidos como créditos por la subdivisión* (*a*) *de la sección* (18)", deberán deducir y retener de dichas ganancias, beneficios e ingresos, una contribución igual al 6 por ciento de los mismos. La subdivisión (*b*) de la misma sección 22 hace responsable del pago de dicha contribución a la persona a quien por la subdivisión (*a*) se le impone la obligación de deducirla al hacer el pago y de retenerla para entregarla al Tesoro Insular.

La sección 18, subdivisión (*a*) de la misma ley, vigente en julio 15 de 1940, disponía:

"§18. Para los fines de la contribución normal solamente se concederán los siguientes créditos: (*a*) Las cantidades recibidas como beneficios de sociedades o como dividendos (1) de una corporación doméstica o (2) de una corporación extranjera cuando se demuestre a satisfacción del Tesorero que más de 50 por ciento del ingreso bruto de dicha corporación extranjera por el período de los tres años terminados al cerrar su año contributivo que precede a la declaración de dichos dividendos . . . ha sido derivado de fuentes radicadas dentro de Puerto Rico . . ."

Basta leer las disposiciones legales a que nos hemos referido, para llegar a las siguientes inescapables conclusiones: (*a*) en julio 15 de 1940, "Central Aguirre Associates", asociación domiciliada en Boston, Mass., accionista de la corporación doméstica "Central Aguirre Sugar Company", no estaba obligada por ley alguna de Puerto Rico a pagar contribución de ingreso sobre la suma de $1,619,856 que en la indicada fecha recibió de la expresada corporación doméstica en concepto de dividendos sobre las acciones inscritas a su nombre; (2) en julio 15, 1940, Central Aguirre Sugar Company no estaba autorizada ni obligada por estatuto alguno de Puerto Rico a deducir y retener parte alguna de los dividendos que de acuerdo con la ley estaba autorizada y obligada a pagar íntegramente a sus accionistas; y (3) en la indicada fecha, Central Aguirre Sugar Company no era ni podía en manera alguna ser considerada como un agente retenedor, habida cuenta de que no existía ley alguna que la autorizara u obligara a retener contribución alguna sobre dividendos pagados a sus accionistas.

Por virtud de la Ley núm. 31 de abril 12 de 1941, la Legislatura enmendó la subdivisión (*a*) de la sección 22 de la Ley de Contribuciones Sobre Ingresos, en el sentido de imponer a "todas las corporaciones y sociedades que tengan el control, recibo, custodia, disposición o pago de . . . dividen-

dos . . . de cualquier individuo no residente que no sea ciudadano de Puerto Rico'', la obligación de ''deducir y retener'' de dichos dividendos ''la contribución normal y adicional fijada por esta ley a los individuos no residentes que no sean ciudadanos de Puerto Rico''. La citada Ley núm. 31 de abril 12 de 1941 enmendó también la sección 32 de la Ley de Contribuciones Sobre Ingresos, eliminando las disposiciones de su apartado (*a*) (6) por virtud de las cuales se autorizaba a las corporaciones para que al computar su ingreso neto dedujeran las cantidades recibidas como dividendos de una corporación doméstica. La citada Ley núm. 31 dispone expresamente que las enmiendas a que nos hemos referido deberán tener efecto retroactivo a partir del primero de enero de 1940. Y es precisamente en esta alegada retroactividad de la ley que el Tesorero basa su derecho a exigir de Central Aguirre Sugar Company el pago de la contribución que la enmienda de 1941 impone por primera vez a los accionistas que recibieron sus dividendos en julio 15 de 1940.

Que la asociación o ''trust'' Central Aguirre Associates o sus accionistas o beneficiarios están obligados, retroactivamente, a pagar la contribución impuesta por la sección 28 o por la sección 35, según quedaron enmendadas por la Ley núm. 31 de 12 de abril de 1941, es cuestión sobre la cual no tenemos duda alguna, especialmente después de nuestra decisión en *Ballester* v. *Tribunal de Apelación de Contribuciones,* 61 D.P.R. 474.

La única cuestión que nos toca considerar y resolver es si la Legislatura tuvo la intención de dar a las disposiciones de la sección 22(*a*) de la Ley número 31 de abril 12 de 1941 efecto legal retroactivo hasta el punto de hacer responsable a la Central Aguirre Sugar Company por el incumplimiento en julio 15 de 1940 de una obligación—la de deducir y retener el importe de la contribución sobre los dividendos —que no surgió a la vida del derecho hasta el 12 de abril de 1941.

La sección 22 de la ley de 1941, después de imponer a las corporaciones la obligación de deducir y retener del importe de los dividendos el de las contribuciones fijadas por la ley a los no residentes que no sean ciudadanos de Puerto Rico, dispone que "Cada una de dichas personas, sociedades o corporaciones queda por la presente declarada responsable de dicha contribución".

Son hechos admitidos, que en julio 15 de 1940, cuando la corporación peticionaria pagó a sus accionistas los dividendos que les correspondían, no existía ley alguna que autorizara al Tesorero de Puerto Rico para imponer una contribución sobre tales dividendos, los cuales estaban expresamente exentos de la contribución de ingreso por las disposiciones ya citadas de la sección 22(a) y 32(a) (6) de la Ley de Contribuciones Sobre Ingresos de 1924; y que en julio 15 de 1940, la ley entonces vigente no obligaba a la corporación pagadora de los dividendos a actuar como agente del Tesoro de Puerto Rico para la deducción y retención de la contribución.

No podemos convenir con el Tesorero en que la legislatura tuviera la intención de hacer aplicable la disposición retroactiva de la sección 29 de la Ley número 31 de abril 12 de 1941, no solamente a la imposición de la contribución si que también a las disposiciones puramente administrativas de la sección 22, subdivisión (a) de la misma ley, referentes a la retención de la contribución en el momento de efectuar el pago de los dividendos. Sería absurdo suponer que la legislatura tuvo la intención de imponer a la corporación peticionaria la obligación de retener lo que ya había pagado a sus accionistas al amparo de la legislación anterior. Es nuestro deber interpretar los estatutos razonablemente y evitar hasta donde fuere posible que surjan serias cuestiones constitucionales. La interpretación del estatuto de acuerdo con la contención del Tesorero levantaría una cuestión constitucional muy seria. Véase: *Luce & Co.* v. *Junta de Salario Mínimo*, 62 D.P.R. 452.

En el año 1934, el Congreso Federal aprobó una ley por la cual se enmendó, con efecto retroactivo al primero de enero de ese mismo año, el tipo de la contribución normal sobre ingresos.· Las autoridades fiscales federales encargadas de hacer cumplir dicha ley, la han interpretado así:

"Se ha solicitado nuestra opinión en cuanto a si la sección 143 de la Ley de Rentas de 1934, que provee para la retención de la contribución al tipo de 4 por ciento sobre pagos de intereses a individuos extranjeros no residentes o a sociedades que no se dedican al comercio o a negocios y que no tienen ni oficina ni sitio de negocio dentro de los Estados Unidos y que se componen en todo o en parte de extranjeros no residentes, es retroactiva a enero 1 de 1934, o si el tipo de 4 por ciento se aplica solamente a los pagos de intereses hechos con posterioridad a la aprobación de la Ley de Rentas de 1934, en mayo 10 de 1934.

"La sección 11 de la Ley de Rentas de 1934, que impone una contribución normal de 4 por ciento . . . . es retroactiva a enero 1 de 1934, pero las disposiciones de la sección 134 de la ley, referentes a la retención (las cuales son meras disposiciones administrativas proveyendo para el cobro en el origen de la contribución impuesta bajo otras secciones del estatuto) *no son retroactivas, toda vez que la retención solamente puede hacerse en el momento del pago de los ingresos.* Las disposiciones de la sección 134 de la Ley de Rentas de 1934 son, por lo tanto, aplicables solamente a los pagos de intereses verificados con posterioridad a mayo 10 de 1934". (Bastardillas nuestras.) IT 2798, XIII—2—C.B. 90. Paul and Mertens. Law of Federal Income Taxation, 1939, Cumulative Supplement, p. 2368.—Véase también Mertens, Vol. 10, p. 124, sec. 56.23, note 3; y Fed. Tax Service, 1941 Commerce Clearing House, Volume 3, par. 6332.

La sección 22(a) de la ley de 1941 impone la obligación de deducir y retener las contribuciones fijadas por la misma ley, a las corporaciones "que tengan el control, custodia; disposición o pago" de dividendos de cualquier individuo no residente de Puerto Rico. No es posible sostener que en la fecha en que comenzó a regir dicha ley, la corporación peticionaria tuviera bajo su control o custodia o a su disposición los dividendos pagados a sus accionistas en julio 15 de 1940.

De acuerdo con las autoridades federales citadas, nos vemos obligados a concluir que las disposiciones del estatuto referentes a la retención del importe de la contribución en el momento de hacerse el pago de dividendos son de carácter administrativo y como tales no tuvieron el efecto retroactivo que la misma ley da a las secciones por virtud de las cuales se impone la contribución. Recientemente, en *Ana María Sugar Co.* v. *Tribunal de Contribuciones,* ante, pág. 258, interpretando la sección referente a la retroactividad de la misma ley, sostuvimos que ella no es aplicable a la otra sección por virtud de la·cual el término de la prescripción se aumenta de cinco a siete años.

La sección 81(*b*) de la Ley de Contribuciones sobre Ingresos no sostiene la posición del Tesorero. Sin referirnos al hecho de que no se ha presentado prueba alguna de que en la fecha del pago la peticionaria fuese deudora de la Central Aguirre Associates, bastará que digamos que la sección 81(*b*) es aplicable solamente a pagos hechos voluntariamente por un deudor por concepto de pagos hechos o por hacer a distintos acreedores. En el caso de autos la peticionaria fué obligada a pagar y pagó bajo protesta.

No existe a nuestro juicio contribución más justa y razoble que la que la ley ahora vigente impone a los dividendos que las corporaciones domésticas pagan a los inversionistas residentes fuera de la Isla. Parece más que justo que los que explotan y extraen el jugo de nuestras fuentes de riqueza y gozan de la protección de nuestras leyes, sin pagar otras contribuciones, contribuyan con una parte de sus beneficios al sostenimiento de nuestro gobierno y al mejoramiento de las condiciones de vida de nuestro pueblo. Empero, el hecho ineludible es que hasta la aprobación de la Ley núm. 31 de abril 12 de 1941, nuestra Asamblea Legislativa permitió que esos dividendos saliesen de esta Isla para el continente y para el extranjero, sin contribuir en lo más mínimo a soportar las cargas insulares. Y aún esa misma ley de 1941 no contiene disposición alguna para autorizar expresa-

mente al Tesorero de Puerto Rico, para que exija a las corporaciones que ya habían pagado los dividendos de 1940, que retengan, de los dividendos que sean declarados con posterioridad a los de 1940 o de los que se declararen en el futuro, el importe de la contribución impuesta por la nueva ley a los accionistas no residentes sobre los dividendos recibidos por ellos en el mes de julio de 1940. Es la Legislatura —y no las cortes de justicia—la que está facultada para conceder esa autorización al Tesorero.

Si el Tesorero de Puerto Rico puede, de acuerdo con las leyes vigentes, sujetar o afectar en alguna forma los dividendos que ahora o en el futuro se encuentren en poder o bajo control de Central Aguirre Sugar Company y sean pagaderos a Central Aguirre Associates, o si el Tesorero de Puerto Rico puede, de acuerdo con nuestras leyes procesales, sujetar o afectar al pago de las contribuciones no satisfechas, las acciones que Central Aguirre Associates tiene en Central Aguirre Sugar Company, son cuestiones no envueltas en este procedimiento y por tanto las pasaremos sin expresar opinión sobre las mismas. Lo único que podemos resolver y así lo resolvemos es que el Tribunal de Contribuciones de Puerto Rico erró al decidir que Central Aguirre Sugar Company venía obligada a pagar con sus fondos la contribución impuesta a y no pagada por Central Aguirre Associates sobre los dividendos recibidos en 1940.

■ La segunda cuestión levantada por la peticionaria es que la disposición de la Ley número 31 de 1941 por virtud de la cual se impone a las corporaciones extranjeras una contribución al tipo de 19 por ciento, mientras a las corporaciones domésticas se les impone al tipo de 17 por ciento, constituye un discrimen ilegal, viola la regla de uniformidad de contribución y es contraria a la Carta Orgánica de Puerto Rico y a la Constitución Federal.

Habiendo resuelto la primera cuestión en favor de la peticionaria, creemos innecesario resolver la segunda. Reser-

varemos nuestra opinión hasta que las partes interesadas en los varios recursos pendientes ante esta Corte Suprema, tengan una oportunidad de ser oídas y de ilustrar al tribunal.

*Por las razones expuestas debe anularse la decisión dictada por el tribunal recurrido en mayo 11 de 1944 y devolverse el caso a dicho tribunal con instrucciones de que proceda a dictar otra ordenando la devolución a la peticionaria de la suma pagada bajo protesta, más los intereses devengados hasta la fecha en que se efectúe la devolución, al tipo fijado por la ley.*