**PORTO RICO TELEPHONE COMPANY,**
Plaintiff, Appellant,

v.

**Sol Luis DESCARTES, Secretary of the Treasury of Puerto Rico, Defendant, Appellee.**

**No. 5302.**

United States Court of Appeals
First Circuit.

Heard Feb. 5, 1958.
Decided May 7, 1958.

George Jackson Eder, New York City, with whom Gonzalo Sifre and Sifre & Ruiz-Suria, San Juan, P. R., were on the brief, for appellant.

Carlos G. Latimer, Asst. Atty. Gen., with whom J. B. Fernandez Badillo, Atty. Gen., Commonwealth of Puerto Rico, and Arturo Estrella, Asst. Atty. Gen., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

The main issue on this appeal involves the question whether the Commonwealth of Puerto Rico had jurisdiction to impose an income tax with respect to certain interest payments, or whether, lacking such jurisdiction, the attempt of Puerto Rico to impose such a tax may be deemed to be a denial of the due process of law guaranteed by the Constitution of the United States. There is also a question involving the taxability by Puerto Rico of certain dividend payments; but here, so far as we can see, the issue is determined by an examination of the local taxing statutes, as to which the decision of the Supreme Court of Puerto Rico cannot possibly be held by us to be inescapably wrong.

The sole appellant is the Porto Rico Telephone Company, a corporation organized under the laws of Delaware and authorized to do business in Puerto Rico, where it has been and is engaged in the operation of a telephone service as a public utility. Its offices are located in San Juan.

On May 7, 1947, the Treasurer of the island notified appellant of a deficiency in income tax withheld at its source, and following the administrative hearing on January 21, 1948, the Treasurer assessed the amount of tax, interest and penalties alleged to be due. On June 10, 1948, the present appellant filed a complaint in the Tax Court of Puerto Rico (now the Superior Court). Judgment was awarded against it on all counts. On December 26, 1952, appellant gave notice of appeal to the Supreme Court of Puerto Rico and as a condition precedent thereto paid the Treasurer the sum of $74,207.83 in accordance with an accounting approved by the Superior Court. On April 29, 1957, the Supreme Court of Puerto Rico entered a judgment modifying the judgment of the Superior Court by eliminating therefrom the five per cent penalties imposed on appellant, and as thus modified the said judgment of the Superior Court was affirmed.

We refer first to the simplest of the two issues, that relating to dividends paid by appellant in the taxable year 1940. In that year, appellant declared two dividends of $54,000 each. $53,829 of each dividend was paid by appellant to International Telephone and Telegraph Company, hereinafter called ITT, a Maryland corporation with its offices in New York City, which owned 99.84 per cent of the capital stock of appellant.

Porto Rico Telephone Company is a foreign corporation within the definition of the Puerto Rican Income Tax Act of 1924, Act No. 74, Laws P.R.1925, p. 400, § 2(a) (4) and (5).

Section 28 of the Income Tax Act, as amended by Act No. 2 of May 25, 1939, Laws P.R., Spec.Sess.1939, p. 10, imposes an annual tax of 14.375 per cent on the *net* income of every corporation in excess of the credits provided for in § 34, with which credits this case is not concerned.

Section 31(a) of the Act defines a corporation's *gross* income as meaning the income as defined in §§ 15 and 19; but

§ 31(b) provides an exception to the effect that, in the case of a foreign corporation [such as ITT], gross income means only gross income derived from sources within Puerto Rico as determined by § 19.

Section 15(a) expressly defines "gross income" as including "dividends". The reference therein to the exception stated in § 31 is not significant here because, upon examination of § 31, it is apparent that the exception relates only to marine insurance companies. Moreover, § 31(b) explicitly provides that in the case of a foreign corporation, "gross income means only gross income from sources within Puerto Rico, determined * * * in the manner provided in section 19."

Section 19 in terms relates only to the determination of what part of gross income shall be treated as derived from sources within Puerto Rico for the purposes of a nonresident individual not a citizen of Puerto Rico; but the incorporation of § 19 by reference in § 31(b) shows that the same method of determining what part of gross income shall be treated as derived from sources within Puerto Rico applies also for the purpose of determining the gross income of a foreign corporation. Section 19(a) (2) (B), as amended by Act No. 18 of June 3, 1927, Laws P.R.1927, p. 488, provides that among gross income derived from Puerto Rico shall be included "dividends" from a foreign corporation [such as appellant], except when less than 50 per cent of such foreign corporation's gross income for the three-year period ending with the close of its taxable year preceding the declaration of dividends was derived from sources within Puerto Rico. It is conceded by the pleadings in the case at bar that more than 50 per cent of the gross income of Porto Rico Telephone Company for a period of more than three years ending at the close of its taxable year preceding the declaration of dividends which were paid in 1940 was derived from sources within Puerto Rico.

In view of the foregoing the Supreme Court of Puerto Rico concluded that ITT was subject to a tax. This result seems correct. It is clear that the dividends paid by appellant must be included in ITT's gross income; however, the tax is laid upon ITT's "net income"; and this is the basis of appellant's main argument with reference to the dividends. The contention is that, though § 15(a) includes dividends in *gross* income, § 32 (a) (6) as it read in 1940 provided that, in computing the net income of a corporation subject to the income tax imposed by § 28, there should be allowed as a deduction the amount received as dividends from any foreign corporation more than fifty per cent of the gross income of which was derived from sources within Puerto Rico for the preceding three years. This being the case, appellant contends that the amount of such deduction canceled out the item of dividends in gross income, so that in effect the dividends were not subject to tax at all, with the consequence that it would be improper to make the appellant withhold any tax thereon.

It is asserted by appellant that § 32 did not require ITT to file a return in order to gain the benefit of the deduction. It is true that under § 19(f), which applied only to a nonresident individual not a citizen of Puerto Rico, it was specifically provided by the legislature that it was necessary to file a return with the Treasurer in order to receive the benefit of allowable deductions. But it is hardly likely that the legislature should have intended a different rule to be applicable to foreign corporations. Section 37(a) provides that every corporation subject to taxation shall make a return "stating specifically the items of its gross income and the deductions and credits allowed by this title. * * * If any foreign corporation has no office or place of business in Puerto Rico, but has an agent in Puerto Rico, the return shall be made and sworn to by the agent"; and § 39(a) provides that, in the case of foreign corporations not having any office or place of business in Puerto Rico, returns shall be made at the same time "as provided in section

27 in the case of a nonresident individual not a citizen of Puerto Rico." The Act also provides broadly in § 68 that the Treasurer is authorized to prescribe all needful rules and regulations for the enforcement of the general administrative provisions of the Act. And Article 199 of such regulations contains the provision that, "Unless a nonresident individual not a citizen of Puerto Rico, a foreign corporation, or a citizen of Puerto Rico or domestic corporation shall file or cause to be filed with the Treasurer, a true and accurate return of income from sources within Puerto Rico, regardless of amount, the tax shall be collected on the basis of the gross income (not the net income) from sources within Puerto Rico."

ITT having failed to file such a return for the taxable year 1940, it seems clear that it was subject to an income tax upon the dividends which it received in that year from appellant.

■ It remains to be considered whether appellant was subject to the withholding tax provision of the Act as applied to its payment of dividends to ITT in 1940.

For present purposes we shall assume in appellant's favor that, either by the due process clause or by the provisions of Puerto Rican law, appellant was not required to make any withholding of a tax on such dividends unless ITT was subject to a tax thereon. Even making that assumption, it is clear from what we have already said that ITT was subject to an income tax on the dividends received unless and until it filed a return with the Treasurer claiming the deduction. It is true that in the 1936 version of the Act, § 22(a) exempted from the withholding provision "income received as dividends of the class allowed as a credit by subdivision (a) of Section 18". Laws 1936, No. 102, § 6. But § 22(a) was further amended by the Act of May 25, 1939, No. 2, Laws P.R., Spec.Sess. 1939, p. 10, so as to strike out this exemption from the withholding provision, with the result of imposing broadly upon all persons having the control,

receipt, custody, disposal, or payment of dividends or other gains an obligation to deduct and withhold from such periodical gains "the normal and additional tax fixed by this Act". And § 35, as amended by the same Act of May 25, 1939, contains the following provision, clearly applicable to ITT and appellant, its subsidiary, as follows:

"In the case of foreign corporations and partnerships, subject to taxation under this title, not engaged in industry or business within Puerto Rico and not having any office or place of business therein, there shall be deducted and withheld at the source in the same manner and upon the same items of income, as is provided in Section 22, a tax of fourteen and three-eighths (14.375) per cent thereof, and such tax shall be returned and paid in the same manner and subject to the same conditions as provided in that section."

The foregoing provision of local law, as enacted in 1939, seems to be inherently reasonable in requiring the withholding corporation to withhold a tax due, without having the burden of determining what deductions might be available as a matter of grace to cut down, or eliminate entirely, the amount of the tax payable by the recipient of the income. We are familiar with such a provision in our own federal tax law; the normal withholding tax on income does not take into account innumerable possible deductions, for instance, deductions for medical expenses, for theft, etc. In the present case, interest, dividends, and management fees were all involved. To require a withholding wherein the withholder does not have to calculate the deductions seems the most practicable way to expedite the withholding process, for the deductions vary with the individual. Even in the case of the tax on dividends, though a deduction was available to ITT which would have wiped out the tax on that item altogether, such deduction was subject to the contingency of the filing of a return by ITT claiming the deduction.

It is said that the decision of the Supreme Court of Puerto Rico in this case was patently erroneous in overruling a portion of Central Aguirre Sugar Co. v. Tax Court, 64 P.R.R. 257 (1944). As to that case the Supreme Court of Puerto Rico had this to say:

"The short of the matter is that in the Aguirre case we overlooked the applicable 1939 version of § 22 (a) and mistakenly applied to a case involving a 1940 tax the 1936 version of § 22(a)."

We do not see how the Supreme Court of Puerto Rico can be charged with error in applying to the case at bar a clearly applicable statutory provision merely because, in an earlier case, the court had overlooked it. We think that the most appellant could be entitled to by reason of this error was what the Supreme Court actually gave it by striking out from the judgment of the Superior Court the five per cent penalty assessment.

■ We now take up the issue with reference to interest payments. For an understanding of how the debts arose and how appellant became obligated to pay interest at a specific rate on such debts, it is necessary to add the following facts:

The taxable years here in controversy are 1940 to 1944, inclusive. During that period appellant paid to ITT, of which it was practically a wholly owned subsidiary, the sum of $96,839.36 as interest on indebtedness. During the same period it paid to International Standard Electric Corporation, hereinafter referred to as ISEC, the sum of $52,730.25 as interest on indebtedness. ISEC, a Delaware corporation wholly owned by ITT, is not a party to the present case. It does not do business in Puerto Rico or have any agents or bank accounts there.

The main indebtedness of appellant to ITT arose in this way. Appellant would prepare its annual budget indicating its proposed expenditures and its resources available to meet such expenditures. ITT would pass on the submitted budget and approve it to the extent it saw fit. Any shortage of resources to meet the approved expenditures would be met in part by bank loans and in part by sums borrowed from ITT. Appellant would cable ITT in New York for the periodical advances previously approved. Moreover, if appellant made expenditures beyond the approved budget, these additional expenses would also be covered by advances from ITT. On the advances thus made by ITT, it imposed upon appellant the obligation to pay a charge of six per cent interest. As illustrative of the tight control which ITT held over the operations of Porto Rico Telephone Company, its subsidiary in Puerto Rico, the Supreme Court of Puerto Rico cited correspondence between appellant and ITT wherein ITT turned down a suggestion by appellant that it be permitted to obtain a loan from Puerto Rican banks at a lower rate of interest.

The various loan transactions took the form of debit and credit advices from ITT. Monthly accounting notices were sent by ITT to the appellant, which then entered the debits and credits on its books in Puerto Rico. Payments on account of principal and interest were made by check drawn by appellant on its New York bank account, which account had been built up for the most part by deposits for appellant's account made by ITT, supplemented on occasion by funds sent from Puerto Rico by appellant and also by various loans from New York banks. These loan obligations were not secured, nor were they evidenced by notes, bonds, or any other obligation, either by appellant or by any other resident of Puerto Rico.

Appellant failed to withhold, and pay to the Treasury of Puerto Rico, a tax on these interest payments made by it to ITT during the years in question, asserting that its failure to do so was based upon the unconstitutionality of the applicable section of the Puerto Rican tax law. Part of the deficiency assessed by the Treasurer against appellant was based upon such failure.

Fortunately we do not have to decide a case where a foreign corporation authorized to do business in Puerto Rico had on its own initiative obtained a loan in New York as a result of arm's length bargaining with a wholly unrelated creditor which had no ties with Puerto Rico. If such had been the case, we would have had to decide whether, under the rationale of Blackstone v. Miller, 1903, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439, the practical power which the Commonwealth had over the debtor corporation was a sufficient basis to authorize the Commonwealth to impose an income tax on the interest payments to the creditor in New York.

It perhaps would be a nice thing if the Supreme Court of the United States could read into the due process clause a prohibition against double taxation, under the guise of assigning to one particular taxing unit the sole "jurisdiction" to lay a tax upon the particular subject matter. Perhaps the Supreme Court of the United States has accomplished that with reference to tangible property. See Sancho v. Humacao Shipping Corp., 1 Cir., 1939, 108 F.2d 157. At one time the Supreme Court of the United States seemed to be trying to reach a similar result in respect of choses in action and other forms of intangible property. See Farmers' Loan & Trust Co. v. State of Minnesota, 1930, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371; Baldwin v. State of Missouri, 1930, 281 U.S. 586, 50 S.Ct. 436, 74 L.Ed. 1056; First National Bank of Boston v. State of Maine, 1932, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313. But this attempt was later given up. In Curry v. McCanless, 1939, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, the Supreme Court drew a sharp distinction, both theoretical and practical, between the taxation of tangibles and the taxation of intangibles, which have no location in space but are rights founded on relationships between persons. The Court said in that case, 307 U.S. at page 373, 59 S.Ct. at page 908:

"We find it impossible to say that taxation of intangibles can be reduced in every case to the mere mechanical operation of locating at a single place, and there taxing, every legal interest growing out of all the complex legal relationships which may be entered into between persons. This is the case because in point of actuality those interests may be too diverse in their relationships to various taxing jurisdictions to admit of unitary treatment without discarding modes of taxation long accepted and applied before the Fourteenth Amendment was adopted, and still recognized by this Court as valid."

And Blackstone v. Miller, 1903, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439, though it had previously been specifically overruled, was revived and restored to respectability by State Tax Commission of Utah v. Aldrich, 1942, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358.

We should hate to have to hold that the rationale of Blackstone v. Miller is broad enough to enable the Commonwealth to impose an income tax upon interest payments made by a Delaware corporation doing business in Puerto Rico to a wholly independent creditor in New York. Of course, if Puerto Rico is empowered to lay an income tax on the interest payments in the supposed case, then any other jurisdiction in which this Delaware corporation is authorized to do business might by a parity of reasoning do so. It may perhaps be significant, in this connection, that Blackstone v. Miller was an estate tax case, in which New York State was held empowered to lay a succession tax upon a deposit in a New York bank held by an Illinois decedent, on the ground that the New York law necessarily had to operate to effectuate the transfer of this asset of decedent "not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor." 188 U.S. at page 205, 23 S.Ct. at page 278.

At any rate we do not have to decide that question in this case, since, as the court below pointed out in the case at

bar, there is quite a sufficient additional array of contacts and ties between the transactions resulting in the payment of interest to ITT and Puerto Rico "to justify the exaction by the Commonwealth of an income tax on such interest so far as due process is concerned." It seems to us we ought to uphold the Puerto Rican tax on the interest payments to ITT on the basis of the generalization in State of Wisconsin v. J. C. Penney Co., 1940, 311 U.S. 435, 444-445, 61 S.Ct. 246, 250, 85 L.Ed. 267, where the Court laid down the test "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. * * * The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction."

We have already seen that under the tight control which ITT exercised over appellant, its subsidiary, appellant could make no expenditures in Puerto Rico in the operation of its public utility service until its annual budget met the approval of ITT, which approval, as a practical matter, constituted an undertaking that ITT would meet appellant's deficits by making loans to it through advances to a current New York bank account on which interest had to be paid by appellant to ITT on the average outstanding balance at the rate of six per cent. And these approved budgets often called for construction programs in Puerto Rico which were calculated to enhance appellant's Puerto Rican earnings and thus ultimately to benefit ITT. Also, it is a fact that ITT operated under a management contract with its subsidiary, for which management services ITT required a fee based apparently upon a specific percentage of the receipts of appellant. The court below noted that since 1940 appellant has voluntarily withheld the income tax payable by ITT on such management fees, from which the court concluded that this constituted in effect a recognition by appellant that such revenues accruing to ITT arose out of contacts between ITT and Puerto Rico for which the Commonwealth furnished the protection, opportunities and benefits which justified the tax.

Nor do we think that appellant's payments of interest to ISEC should be treated any differently. It is true that ISEC is not the dominant stockholder in control of the Puerto Rican operations of appellant. But ISEC is also a subsidiary of ITT, and is operated by ITT, along with appellant, as part of a single system. None of the indebtedness of appellant to ISEC could arise except subject to the prior approval by ITT of appellant's budget expenditures. When an approved budget of appellant called for expenditures in the United States for the purchase of supplies, appellant's purchases would technically be made by ISEC, which in the first instance would pay the manufacturers from whom the purchases were made on appellant's account. Instead of immediate reimbursement of ISEC by appellant, the arrangement was, as insisted upon by ITT, that ISEC's expenditures on behalf of appellant would be treated as loans bearing interest at six per cent. Again, as with ITT, appellant would make payments to ISEC by check on appellant's bank account in New York, made up for the most part from loans by ITT to appellant. The accounting procedure as between ISEC and appellant was the same as in the case of the ITT transactions above related. Of course the income which ISEC was thus enabled to earn inured indirectly to the benefit of ITT, the top holding company; and it would be scandalous if ITT could avoid the incidence of taxation to it of interest payments by appellant by the simple device of interposing another subsidiary in New York charged with the responsibility of making loans at interest to appellant.

A judgment will be entered affirming the judgment of the Supreme Court of Puerto Rico.