LIBBY, MCNEILL & LIBBY WEST INDIES CO., Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 10789. Resubmitted February 6, 1961.—Decided April 11, 1961.

*James R. Beverley, Carmen B. Hernández,* and *Francisco Cas-
tro Amy* for appellant. *J. B. Fernández Badillo, Acting
Secretary of Justice,* and *Manuel J. Medina Aymat, Assistant
Attorney General,* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Libby, McNeill & Libby is a corporation organized under
the laws of Maine, and it is not authorized to do business
in Puerto Rico. For the world-wide distribution of its
products, it organizes other subsidiary corporations to which
a determined area is assigned for the purpose of business
transactions. Employees of Libby, McNeill & Libby appear
as stockholders, officers and directors of these subsidiary
corporations, but all the shares are endorsed in blank in favor
of the parent corporation. As a matter of fact, the distribu-
tion of dividends by these subsidiaries is determined by the
Maine corporation, which is the true and only owner of all
the shares.[1] For the purposes indicated above, the Libby,
McNeill & Libby West Indies Co. who is authorized to do
business in Puerto Rico was organized in the state of Il-
linois.[2] Its directors and stockholders are J. R. Hamady,
a resident of Puerto Rico, C. C. Swanson, G. I. Joy, V.
L. Munger and B. H. Resnich, residents of Illinois and
connected with the Maine corporation. Libby (West Indies)

---

[1] The witness Fred P. Slivon, Secretary-Treasurer and Director of the
Maine corporation, stated that "the latter transacts its business through
subsidiaries," that "it is our practice, when establishing subsidiaries, to
appoint employees of the Libby, McNeill corporation of Maine as officers,
directors and stockholders of the subsidiary corporation" and "that these
stockholders endorse their shares in blank and deliver them to us, in order
that the Libby, McNeill & Libby corporation may keep them under my
custody"; that they are dummy stockholders and that every subsidiary
needs an employee of the Maine corporation. Mr. J. R. Hamady, President
and Manager of the Illinois corporation stated that neither he nor the
San Juan office has any control over the declaration or payment of
dividends.

[2] Hereinafter we shall refer to the Maine corporation as Libby (Maine),
and to the Illinois corporation as Libby (West Indies).

is engaged in the sale of Libby products in Puerto Rico, and also has commission sales contracts with brokers in the Dominican Republic, Haiti, St. Croix and other Virgin Isles belonging to the United States. These broker's contracts are filed in the offices located in San Juan. It keeps a current account in the Royal Bank of Canada, San Juan branch, wherein "the proceeds of the sales transacted" are deposited.

During the year 1949, Libby (West Indies) had a net income from sources within Puerto Rico of $192,955.14 and it paid the sum of $55,034.30 as tax. Therefore, it had a net balance of $137,920.84. At the beginning of the tax year it had an undivided profit of $91,849.94. It was stipulated by the parties that more than eighty (80) per cent of the volume of its business in 1949 was transacted in Puerto Rico.

On December 29, 1949, the Board of Directors of Libby (West Indies) met in the city of Chicago and approved a dividend for the sum of $100,000 to be distributed from the earned profits, and to be paid in full the 31st of the following December. As Libby (Maine) is the owner of all the shares of Libby (West Indies), it received the payment of said dividend, and a transfer of $100,000 was made to that effect from the surplus fund to the current account of Libby (Maine) in the journal book of the latter, so as "to record a payment of dividends (in cash) declared by Libby, McNeill and Libby, West Indies Co.".

In the tax return presented by Libby (West Indies) for the assessment of local income tax for the year 1949, the total amount of this dividend was set forth as the: "total distribution to stockholders charged to earned surplus during the taxable year." After the declaration of this dividend it still had an earned surplus of $124,017.33.

On August 23, 1950 the Treasurer of Puerto Rico notified Libby (West Indies) of a deficiency for the amount of

$36,395.00,[3] because it had failed to withhold, pursuant to § 22(a) of the Income Tax Act of 1925, the tax owed by Libby (Maine) on account of the declaration and payment of said dividend. Feeling aggrieved by this administrative decision, the plaintiff appealed to the Tax Court which affirmed the Treasurer's decision.

On appeal from the judgment rendered, it is set forth that the Superior Court erred in not deciding that § 19(a)(2)(b) of the Income Tax Act of 1925 (13 L.P.R.A. § 698(a)(2)(b)) is unconstitutional insofar as it taxes the dividends received by nonresident individuals not citizens of Puerto Rico (a) declared and paid by a foreign corporation from profits derived within and without Puerto Rico; and (b) declared and paid without Puerto Rico.

■ There is no dispute whatsoever as to the fact that in case that Libby (Maine) is obliged to pay the tax imposed by the Secretary of the Treasury, the taxpayer-appellant, Libby (West Indies), is then obliged to withhold the same, and in not doing so, it is responsible for its payment. To that effect, paragraph (a) of § 22 of the Income Tax Act of 1924 (13 L.P.R.A. § 701(a))[4] provides that any corporation having the control, disposal or payment of dividends of any nonresident individual not a citizen of Puerto Rico, shall deduct and withhold from such dividends the tax fixed for those cases in the same act; and paragraph (b) of said section (13 L.P.R.A. § 701(b)) imposes upon the withholding agent the obligation to make the corresponding return on or before March 15 of each year, and to pay on or before June 15 the stipulated tax and it provides specifically that every person or corporation which shall make such withholding is made liable for such tax. *Puerto Rico Telephone*

---

[3] This sum is broken down thus:
Tax—$29,000, that is 29% of 100,000.
Interest—7,395.00.

[4] The text of this section applicable to the facts of the case at bar is that of Act No. 430 of May 14, 1952 (Sess. Laws, p. 874), which was given a retroactive effect to January 1, 1924.

*Co.* v. *Secretary of the Treasury*, 79 P.R.R. 845 (1957) affirmed in 255 F.2d 169 (1958), and overruling *Central Aguirre* v. *Tax Court*, 64 P.R.R. 257 (1944); *San Juan Trading Co.* v. *Secretary of the Treasury*, 80 P.R.R. 778, 791-2 (1958). There is no dispute either regarding the fact that since the corporation in question is a foreign corporation as defined in § 2(*a*) (5) of the Act related to paragraph (*a*) (4),[5] which is not engaged in trade or business within Puerto Rico, the tax to be withheld over the paid dividend is one equal to twenty nine (29) per centum of said income. Section 35 of the Income Tax Act of 1925 (13 L.P.R.A. § 738). *Sartorious & Co.* v. *Descartes, Secretary of the Treasury*, 79 P.R.R. 119 (1956). Libby (West Indies) did not withhold or declare or pay on the date prescribed by the law any tax whatsoever in relation to the oft-mentioned dividend of $100,000.

To approach the issue raised, and although no specific point is made by the taxpayer in this respect, we shall part from the basis that the alleged unconstitutionality arises from the violation of the due process of law, and that no challenge is made regarding any conflict with the interstate commerce clause.[6] As a matter of fact, the income which is alleged to be derived without Puerto Rico does not refer

---

[5] The term "domestic" when applied to corporations, means those created or organized in Puerto Rico under the local laws; and all those which are not domestic shall be considered as "foreign" corporations.

[6] See, *Northwestern States Portland Cement Co.* v. *Minnesota*, 358 U.S. 450 (1959) and the annotation in 67 A.L.R.2d 1322 entitled *Validity, under Federal Constitution, of state tax on, or measured by, income of foreign corporation.* See also the following commentaries on the case cited above: 46 Va. L. Rev. 297 (1960); 57 Mich. L. Rev. 903 (1959); 47 Cal. L. Rev. 777 (1959); 27 Geo. Wash. L. Rev. 725 (1959). In general terms it may be said that a state may impose a tax over the net income of a foreign corporation which is engaged *exclusively* in interstate commerce activities provided that (a) it transacts sufficient business within the state to justify such imposition; and, (b) the tax should not be discriminatory and meet the formula for a reasonable distribution of income. *Cf. Buscaglia* v. *Ballester*, 162 F.2d 805 (1947) cert. denied 332 U.S. 816 (1947).

to sources in other states of the Union, but in foreign countries or territories.

Section 31 (a) of the Income Tax Act of 1925 (13 L.P.R.A. § 734 (b) ) provides that in the case of a foreign corporation, gross income means only income from sources within Puerto Rico as determined in the manner provided in § 19 (13 L.P.R.A. § 698), that regarding dividends, it specifies that those declared by a foreign corporation shall be treated as gross income unless less than twenty per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends was derived from sources within Puerto Rico.[7] Section 191 of the Regulations of the Income Tax Act of 1925 expressly provided that these dividends shall be treated as income from sources within Puerto Rico unless the taxpayer shows, to the satisfaction of the Treasurer, that he is exempt therefrom. In other words, a presumption is established that the dividends are part of the gross income of the nonresident, foreign taxpayer, and the burden of establishing the contrary falls upon him. In *Inter-American Orange Crush* v. *Secretary of the Treasury*, 81 P.R.R. 286, 291 (1959) the corporation in question was a foreign corporation authorized to do business in Puerto Rico and which sold ingredients to manufacture the concentrates for certain carbonated drinks. The sale of such products was made in Puerto Rico; and in addition to the payment of the price

---

[7] Section 19 (a) (2) (b) preserved its original language until the approval of the Income Tax Act of 1954, except that by Act No. 31 of April 12, 1941 (Sess. Laws, p. 478) the volume of gross income which must be derived from sources within Puerto Rico for the three-year period preceding the declaration of dividends was reduced from fifty to twenty per centum. The pertinent part of this section is a literal translation of § 217 (2) (B) of the Federal Revenue Act of 1924 (26 U.S.C., Act of 1924, § 217). Section 119 (a) (2) (B) of the Income Tax Act of 1954 (13 L.P.R.A. § 3119) preserved in essence the same language of the above cited § 19 (a) (2) (b) and added that the dividends shall be taxable as gross income in an amount which bears the same ratio to such dividends which the gross income of the corporation for said period from sources within Puerto Rico bears to its gross income from all sources.

agreed upon for the ingredients, the licensees were bound to pay other sums for the privilege of using in their respective countries the trade marks and the trade names belonging to the plaintiff. We stated in that case that the burden is always on the taxpayer to prove what portion of the income derived from the sale of personal property should be allocated to sources without Puerto Rico, and that if the evidence does not furnish any basis for apportioning or allocating the gross income, *the totality of such income shall be treated as income from sources within Puerto Rico.*

In *P.R. Telephone Co.* v. *Secretary of the Treasury,* 79 P.R.R. 845 (1957) the corporation in question was a corporation organized under the laws of the state of Delaware and authorized to do business in Puerto Rico (Porto Rico Telephone Company) and there was another corporation organized under the laws of Maryland and not authorized to do business locally (International Telephone and Telegraph Corporation) and which owned 99.84% of the capital stock of the former; in 1940 dividends were declared, and the Treasurer of Puerto Rico notified the Porto Rico Telephone Co. of an income tax deficiency for not having withheld and paid any tax over these dividends. We held that the non-resident corporation which received the income, *including the dividends,* of another corporation which derived more than the fifty (50) per centum of its gross income from sources within Puerto Rico was obliged to pay a tax over the income received by it from sources within Puerto Rico, less whatever credits and deductions were allowed. In relation to the deductions, § 32(*b*) provides that in the case of a foreign corporation the deductions shall be allowed only if and to the extent that they are connected with income from sources within Puerto Rico and that the apportionment of the deductions with respect to sources within and without Puerto Rico shall be determined by the rules and regulations prescribed by the Treasurer. In order to determine the

*taxable net* income when the income is derived both from within and without Puerto Rico, § 197 of the Regulations provides in relation to the apportionment of deductions the following:

"From the items specified in articles 190 to 195 as being derived specifically from sources within and without Puerto Rico (§ 191 refers to dividends) there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any other expenses, losses, or deductions which can not definitely be allocated to some item or class of gross income. The remainder shall be included in full as income from sources within Puerto Rico. *The ratable part is based upon the ratio of gross income from sources within Puerto Rico to the total gross income.*"

Finally § 199 of said Regulations clearly establishes that unless a nonresident foreign taxpayer files a "true and accurate" return of income from sources within Puerto Rico, the tax shall be collected on the basis of the gross income derived from local sources. This section was applied in the case of *Porto Rico Telephone* v. *Secretary of the Treasury, supra,* and on appeal to the United States Court of Appeals, First Circuit, it was stated that "I.T.T. having failed to file such a return for the taxable year 1940, it seems clear that it was subject to an income tax upon the dividends which it received in that year from appellant." *Porto Rico Telephone Co.* v. *Descartes,* 255 F.2d 169, 172 (1958).

■■ There is no doubt whatsoever as to the power of the Commonwealth to levy an income tax on dividends declared or paid on profits derived from activities and business transacted in Puerto Rico. In *International Harvester Co.* v. *Wisconsin Dept. of Taxation,* 322 U.S. 435 (1944), it was held that a state may tax the earnings realized within said state and distributed as dividends to the stockholders, since it has afforded protection and benefits to the corporate activities of the company which has produced said profits. *Cf. Freeman* v. *Secretary of the Treasury, ante,* p. 298 de-

cided on March 24, 1961. Of course, it cannot impose a tax on profits or earnings derived from sources located without the limits of its territory, since the properties and activities which produce them do not enjoy the protection, advantages and opportunities afforded by the state. *Inter-American Orange Crush* v. *Secretary of the Treasury*, 81 P.R.R. 286, 297 (1959); *P.R. Telephone Co.* v. *Secretary of the Treasury*, 79 P.R.R. 845 (1957); *Connecticut General L. Ins. Co.* v. *Johnson*, 303 U.S. 77 (1938). All that is necessary to meet the requisites of the due process of law is that there be a sufficient nexus between the state's power to impose the tax and the activities or businesses subject to the tax, which requirement is met by merely determining whether the state has offered or granted benefits, protection or advantages. *Northwestern States Portland Cement Co.* v. *Minnesota*, 358 U.S. 450 (1959); *Miller Bros, Co.* v. *Maryland*, 347 U.S. 340 (1954); *West Publishing Co.* v. *McColgan*, 166 P.2d 861 (Cal. 1946) affirmed in 328 U.S. 823 (1946); *Curry* v. *McCanless*, 307 U.S. 357 (1939); *State Tax Commissioner* v. *Aldrich*, 316 U.S. 174 (1942); *Graves* v. *Schmidlapp*, 315 U.S. 657 (1942). That is why, when a corporation does business within and without the limits of a territory, it is permissible to adopt, for taxation purposes, a formula to allocate the income and to determine that portion of the net income which is taxable in a given jurisdiction, *Butler Bros.* v. *McColgan*, 315 U.S. 501 (1942); *Hans Rees' Sons* v. *State of North Carolina*, 283 U.S. 123 (1931); *Underwood Typewriters Co.* v. *Chamberlain*, 254 U.S. 113 (1920), but the taxpayer has the *onus probandi* that the application of the formula to his particular case operates in such a way as to result in the taxing of extra-territorial income. *Crawford Mfg. Co.* v. *State Commissioner of Rev. & Tax*, 304 P.2d 504, 515 (Kan. 1956); *Butler Bros.* v. *McColgan, supra; Norfolk & W.R. Co.* v. *North Carolina*, 297 U.S. 682 (1936).

A careful and thorough examination of the facts involved

in the case at bar leads us to the inevitable conclusion that the dividend declared by Libby (West Indies) and which was paid to Libby (Maine) was *exclusively* based on profits derived from sources within Puerto Rico. As a matter of fact, Libby (West Indies) realized net profits here in 1949 in the amount of $192,955.14, and after paying the income tax due in relation to his local activities which amounted to $55,034.30, it accumulated profits subject to distribution in the amount of $137,920.84. According to the legal presumption established by § 4(b) of the Income Tax Act of 1925, the distribution of the dividend amounting to $100,000 was made out of "the most recently accumulated" profits.[8] The taxpayer has limited itself to alleging that the tax levied on the total dividends actually amounts to a tax on profits obtained from business transacted without Puerto Rico. No satisfactory evidence was offered to establish this fact, unless they pretend to rely upon the stipulated fact that during the year 1949 "the volume of business transacted by the company without Puerto Rico was less than twenty per cent." This fact by itself does not alter the deduction that the total dividend was derived from activities transacted here. On the other hand, from the return presented by the taxpayer it clearly appears that (a) the sum of $100,000, the amount of the dividend declared and paid, was set forth as the "total distribution to stockholders charged to earned surplus during the taxable year", (b) that in any event, the amount distributed as dividend ($100,000) is less than the total of net profits accumulated during the year in which said dividend ($137,920.84) was declared and paid;[9] and (c) that for said

[8] Section 4(b) provides, in its pertinent part, that "For the purposes of this Act every distribution [of dividends] is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits."

[9] In *Lord Forres*, 25 B.T.A. 154 (1932) the taxpayer received dividends from a foreign corporation, more than fifty (50) per centum of whose income was derived from sources within the United States. These profits were transferred to England and were commingled with other corporate

taxable year Libby (West Indies) deducted the sum of $33,080.57 as brokerage expenses. As it will be remembered, the evidence established that the businesses allegedly made without Puerto Rico are transacted by brokers in other countries. The deduction that these transactions were included as sales in the tax return filed in Puerto Rico and that the amount paid as brokerage was claimed as deductible expense seems to be logical. Once more the burden fell upon the appellant to put the judge in a condition to weigh the evidence regarding this phase of the case, and it failed to do so. The appellant cannot complain now of the consequences of its omission.

■■ Regarding the second challenge made by the taxpayer against the constitutionality of § 19 (a) (2) (b) in levying a tax on a dividend declared and paid without Puerto Rico, again we disagree. The power of a state to levy taxes on transactions which take place within the state is not affected by the fact that the exaction is contingent upon events brought to pass without the state. *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 445 (1940). The fundamental factor is the *origin* of the taxable income, which is ascribed to the place where the property yielding the dividend is situated or where the corporation transacts the operations culminating in the accumulation of profits which are distributed as dividends. The place where the income is received is not necessarily controlling as to the source of the income. If this were the case, it would be sufficient for the taxpayer to require that the payment of his income be made without Puerto Rico so as to avoid the local tax, and in this way we would be allowing him to decide personally the source of his income irrespective of the situs where it was realized. *Ard-*

income derived from sources without the United States; and thereafter the dividends were declared. It was held that the tax was not unconstitutional and particularly the fact that: "the corporation's earnings coming from its properties within the United States were more than sufficient to provide for the dividends here in question" (at page 161).

*bern Co.* v. *Commissioner of Internal Revenue*, 41 B.T.A. 910, 927 (1940), modified in 120 F.2d 424 (CCA 4, 1941); *Sabatini* v. *Commissioner of Internal Revenue*, 98 F.2d 753 (CCA 2, 1938); *cf. Commissioner of Internal Revenue* v. *East Coast Oil Co.*, 85 F.2d 322 (CCA 5, 1936), certiorari denied 299 U.S. 608 (1936). This solution has been expressly rejected in the case of payment of interests. *Tonopah & T.R. Co.* v. *Commissioner*, 39 B.T.A. 1043 (1939) reversed for other reasons 112 F.2d 970 (C.C.A. 9, 1940); *Dexter* v. *Commissioner*, 47 B.T.A. 285 (1942). In *Georday Enterprises, Ltd.* v. *Commissioner*, 126 F.2d 384 (C.C.A. 4, 1942) it was held that a dividend received by a foreign corporation (Canada) from another foreign corporation and which was derived from profits and earnings obtained by the latter in a plan of reorganization whereby such corporation took over the whole assets of a Delaware corporation, constituted income derived from sources within the United States, *notwithstanding that the transactions occurred in Canada*, since the profits were derived in their source from operations and activities transacted in the United States.

Besides, we fully adopt the reasoning set forth in the opinion rendered by the respondent judge, who properly stated: "Nonessential facts regarding the source of the income which are contingent upon the will or fancy of a taxpayer, such as the state or place which he chooses to organize into a corporation, or the place which is selected to hold a board meeting and to declare a dividend, cannot defeat the power of the Commonwealth of Puerto Rico to collect a tax, if on the other hand said tax has been levied and is proper at law. We should not forget that plaintiff's President testified that all the collections obtained from the sales made by them were deposited in a bank in Puerto Rico, the Royal Bank of Canada, and that according to the evidence, the plaintiff had no other sources of income but its own sales."

For the reasons set forth above, we conclude that § 19 (*a*) (2) (*b*) as it is applied to the facts and circumstances of the case at bar is not unconstitutional, and the judgment appealed from is affirmed in all its parts.

Mr. Justice Santana Becerra did not participate herein.