LIBBY, McNEILL & LIBBY WEST INDIES Co., demandante y apelante, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y apelado.

Número 10789.

*Reasignado:* 6 de febrero de 1961. *Resuelto:* 11 de abril de 1961.

390

*James R. Beverley, Carmen B. Hernández* y *Francisco Castro Amy,* abogados de la apelante; *J. B. Fernández Badillo, Secretario de Justicia Interino* y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Libby, McNeill & Libby es una corporación organizada de acuerdo con las leyes del estado de Maine, que no está autorizada para hacer negocios en Puerto Rico. A los fines de la distribución mundial de sus productos, organiza otras corporaciones subsidiarias, y se les asigna determinada área para la realización de negocios. Empleados de Libby, McNeill & Libby figuran como accionistas, oficiales y directores de estas corporaciones subsidiarias, pero todas las acciones se endosan en blanco a favor de la corporación matriz. Como cuestión de hecho, la distribución de dividendos por estas subsidiarias se determina por la corporación de Maine, que es la verdadera y única dueña de todas las acciones.(¹)

---

(¹) El testigo Fred P. Slivon, Secretario-Tesorero y Director de la corporación de Maine, declaró que ésta hace todos sus negocios a través de subsidiarias", que "es costumbre para nosotros, al establecer corporaciones subsidiarias nombrar empleados de la corporación Libby, McNeill de Maine, como oficiales directores y accionistas de la corporación subsidiaria", y "que estos accionistas endosan sus acciones en blanco y nos las entregan para conservarlas, para que la corporación Libby, McNeill & Libby las tenga bajo mi custodia"; que estos accionistas son nominales (dummy stockholders) y que en toda subsidiaria se necesita un empleado de la corporación de Maine. El señor J. R. Hamady, Presidente y Gerente de la corporación de Illinois, declaró que ni él, ni la oficina de San Juan, tienen control sobre la declaración o pago de dividendos.

A los fines indicados anteriormente se organizó en el estado de Illinois la corporación Libby, McNeill & Libby, West Indies Co.,(²) que está autorizada para hacer negocios en Puerto Rico. Sus directores y accionistas son los señores J. R. Hamady, residente en Puerto Rico, C. C. Swanson, G. I. Joy, V. L. Munger y B. H. Resnick, residentes de Illinois, y quienes están relacionados con la corporación de Maine. Libby (West Indies) realiza negocios de venta de los productos Libby en Puerto Rico, y tiene además contratos de ventas a comisión con agentes situados en la República Dominicana, Haití, Santa Cruz y otras de las Islas Vírgenes pertenecientes a Estados Unidos. Estos contratos con los agentes (broker's contracts) se encuentran archivados en las oficinas localizadas en San Juan. Mantiene una cuenta corriente en el Royal Bank of Canada, de San Juan, y en la misma se depositan "todos los cobros por ventas hechas".

Durante el año 1949 Libby (West Indies) tuvo un ingreso neto de fuentes radicadas en Puerto Rico de $192,955.14 y pagó una contribución total de $55,034.30. Tuvo, por tanto, un sobrante neto de $137,920.84. Al comienzo de dicho año contributivo tenía beneficios acumulados por $91,849.94. Se estipuló por las partes que más del ochenta (80) por ciento del volumen de sus negocios en 1949 se realizó en Puerto Rico.

En 29 de diciembre de 1949 la Junta de Directores de Libby (West Indies) se reunió en la ciudad de Chicago y aprobó la distribución de un dividendo por la suma de $100,000 para ser distribuido de las ganancias acumuladas, y para ser satisfecho el día 31 de diciembre siguiente. Como Libby (Maine) es la dueña de todas las acciones de Libby (West Indies), recibió el pago de dicho dividendo, y al efecto, en el libro diario general (journal book) de esta última se hizo una transferencia de $100,000 del fondo superávit a la cuenta corriente de Libby (Maine), para así "registrar

---

(²) En adelante nos referiremos a la corporación de Maine como Libby (Maine) y a la corporación de Illinois como Libby (West Indies).

un pago de dividendo (en efectivo) declarado por Libby Mc-Neill and Libby, West Indies Co.".

En la declaración presentada por Libby (West Indies) a los fines de la imposición de la contribución local sobre ingresos para el año 1949, se consignó el importe total de este dividendo como "distribución total a accionistas cargada al sobrante acumulado durante el año contributivo" (total distributions to stockholders charged to earned surplus during the taxable year). Después de declarado este dividendo tenía aún un sobrante acumulado de $124,017.33.

En 23 de agosto de 1950 el Tesorero de Puerto Rico le notificó a Libby (West Indies) una deficiencia por la suma de $36,395.00,[3] por no haber ésta retenido, de conformidad con la sección 22(a) de la Ley de Contribuciones sobre Ingresos de 1925, la contribución adeudada por Libby (Maine) con motivo de la declaración y pago de dicho dividendo. No conforme con esta actuación administrativa, la demandante recurrió al Tribunal de Contribuciones, que confirmó la actuación del Tesorero.

En apelación contra la sentencia dictada se señala que el Tribunal Superior incidió en error al no resolver que la sección 19(a)(2)(b) de la Ley de Contribuciones sobre Ingresos de 1925 (13 L.P.R.A. sec. 698(a)(2)(b)) es inconstitucional en tanto en cuanto somete a tributación dividendos recibidos por no residentes ni ciudadanos de Puerto Rico a) declarados y pagados por una corporación extranjera de ganancias derivadas dentro y fuera de Puerto Rico; y b) declarados y pagados fuera de Puerto Rico.

■ No hay controversia alguna sobre el hecho de que en caso de que Libby (Maine) esté obligada al pago de la contribución exigida por el Secretario de Hacienda, la contribuyente apelante Libby (West Indies) venía obligada a retener

---

[3] Esta suma se desglosa en la siguiente forma:

Contribución............  $29,000, o sea 29% de 100,00.
Intereses ..............  $ 7,395.00

la misma, y al no hacerlo es responsable de su pago. Al efecto dispone, el inciso (a) de la sección 22 de la Ley de Contribuciones sobre Ingresos de 1924 (13 L.P.R.A. sec. 701(a)) (⁴) que toda corporación que tenga el control, disposición o pago de dividendos a cualquier individuo no residente que no sea ciudadano de Puerto Rico deberá deducir y retener de dichos dividendos la contribución que para tales casos se fija en la misma ley; y el inciso (b) de dicha sección (13 L.P.R.A. sec. 701(b)) le impone al agente retenedor la obligación de presentar la correspondiente declaración en o antes de marzo 15 de cada año, y de pagar en o antes de junio 15, la contribución determinada, y específicamente dispone que la persona o entidad que debe hacer la retención queda declarada responsable de dicha contribución. *Puerto Rico Telephone Co.* v. *Secretario de Hacienda*, 79 D.P.R. 895 (1957) confirmado en 255 F.2d 169 (1958), y revocando a *Central Aguirre* v. *Tribunal de Contribuciones*, 64 D.P.R. 268 (1944); *San Juan Trading Co.* v. *Secretario de Hacienda*, 80 D.P.R. 807, 821-2 (1958). Tampoco hay controversia en cuanto a que, tratándose en este caso de una corporación extranjera según se define en la sección 2(a) (5) de la ley en relación con el párrafo (a) (4),(⁵) que no se dedica a industria o negocio en Puerto Rico, la contribución a retenerse sobre el dividendo pagado es de veinte y nueve (29) por ciento de dicho ingreso. Sección 35 de la Ley de Contribuciones sobre Ingresos de 1925 (13 L.P.R.A. sec. 738). *Sartorious & Co.* v. *Descartes*, 79 D.P.R. 126 (1956). Libby (West Indies) no retuvo ni declaró o pagó en la fecha prescrita por la ley contribución alguna en relación con el dividendo de $100,000 tantas veces mencionado.

---

(⁴) El texto de esta sección aplicable a los hechos del presente caso es el de la Ley núm. 430 de 14 de mayo de 1952 (Leyes, pág. 875), a la cual se le dió efecto retroactivo al 1ro. de enero de 1924.

(⁵) El término "doméstica", cuando se aplique a corporaciones, significará las creadas u organizadas en Puerto Rico de acuerdo con las leyes locales; se considerarán "extranjeras" todas aquellas que no sean domésticas.

Para enfocar la cuestión planteada, y aunque nada específico nos dice el contribuyente sobre el particular, debemos partir de la base que la supuesta inconstitucionalidad surge de la violación del debido procedimiento de ley, y que no está envuelto reparo alguno con motivo de conflicto con la cláusula de comercio interestatal.(⁶)   Como cuestión de hecho, los ingresos que se alegan derivados fuera de Puerto Rico no se refieren a fuentes en otros estados de la Unión, sino en países o territorios extranjeros.

La sección 31(a) de la Ley de Contribuciones sobre Ingresos de 1925 (13 L.P.R.A. sec. 734(b)) dispone que en el caso de una corporación extranjera, ingreso bruto significa solamente el ingreso derivado de fuentes radicadas en Puerto Rico determinado en la forma dispuesta en la sección 19 (13 L.P.R.A. sec. 698), que en cuanto se refiere a dividendos especifica que se considerarán como ingreso bruto los declarados por una corporación extranjera, a no ser que menos del veinte por ciento del ingreso bruto de dicha corporación extranjera por el período de tres años terminado al finalizar su año contributivo precedente a la declaración de tales dividendos ha sido derivado de fuentes radicadas en Puerto Rico.(⁷)   El artículo 191 del Reglamento de la Ley de Con-

(⁶) Véanse, *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450 (1959) y anotación en 67 A.L.R.2d 1322 intitulada *Validity, under Federal Constitution, of state tax on, or measured by, income of foreign corporation.* Véanse además los siguientes comentarios sobre el caso citado: 46 Va. L. Rev. 297 (1960); 57 Mich. L. Rev. 903 (1959); 47 Cal. L. Rev. 777(1959); 27 Geo. Wash. L. Rev. 725 (1959). En términos generales puede decirse que un estado puede imponer una contribución sobre el ingreso neto de una corporación extranjera que se dedica *exclusivamente* a actividades de comercio interestatal siempre que a) lleve a cabo suficientes actividades dentro del estado para justificar la imposición; y, b) la contribución no sea discriminatoria y responda a una fórmula de distribución razonable del ingreso. Cf. *Buscaglia* v. *Ballester,* 162 F.2d 805 (1947) *cert. denegado* 332 U.S. 816 (1947).

(⁷) La sección 19(a) (2) (b) conservó su redacción original hasta la aprobación de la Ley de Contribuciones sobre Ingresos de 1954, excepto que mediante la Ley núm. 31 de 12 de abril de 1941 (Leyes, pág. 479) se redujo de cincuenta a veinte por ciento el volumen del ingreso bruto que debe realizarse en Puerto Rico por el período de tres años precedentes a la declaración del dividendo. La parte pertinente de esta sección es una

tribuciones sobre Ingresos de 1925 dispuso expresamente que' estos dividendos se considerarían como ingreso de fuentes; radicadas en Puerto Rico a menos que el contribuyente pro-bare, a satisfacción del Tesorero, que su exclusión era pro-cedente. En otras palabras, se establece una presunción de que los dividendos forman parte del ingreso bruto del contribuyente extranjero no-residente, y a éste corresponde establecer lo contrario. En *Inter-American Orange Crush* v. *Secretario de Hacienda*, 81 D.P.R. 293, 300 (1959) se trataba de una corporación extranjera autorizada a hacer negocios en Puerto Rico que vendía ingredientes para la manufactura de concentrados de ciertas bebidas gaseosas. La venta de los productos se celebró en Puerto Rico; y en adición al pago del precio convenido por los ingredientes los concesionarios venían obligados a pagar otras sumas por el privilegio de usar en sus respectivos países las marcas de fábricas y las marcas registradas que pertenecían a la demandante. Dijimos en dicho caso que en relación con los ingresos derivados de la venta de propiedad mueble, correspondía al contribuyente establecer qué parte debe atribuirse a fuentes fuera de Puerto Rico, y que si la evidencia no revelaba ninguna base para distribuir o prorratear el ingreso bruto, *la totalidad del mismo se consideraba como ingreso derivado de fuentes dentro de Puerto Rico.*

En *P. R. Telephone Co.* v. *Srio. Hacienda*, 79 D.P.R. 895 (1957) se trataba de una corporación organizada bajo las leyes del estado de Delaware que estaba autorizada para hacer negocios en Puerto Rico (Porto Rico Telephone Company) y de otra corporación organizada bajo las leyes de

---

traducción literal de la sección 217(2)(B) de la Ley Federal de Contribución sobre Ingresos de 1924 (26 U.S.C., Act 1924, sec. 217). La sección 119(a)(2)(B) de la Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. sec. 3119) conservó sustancialmente la redacción de la mencionada sección 19(a)(2)(b) y añadió que el dividendo sería tributable como ingreso bruto en una cantidad que guarde la misma proporción con tales dividendos que el ingreso bruto de la corporación por dicho período de fuentes dentro de Puerto Rico guarde con su ingreso bruto de todas las fuentes.

Maryland que no estaba autorizada localmente para hacer negocios (International Telephone and Telegraph Corporation) y que era dueña del 99.84 por ciento de las acciones de la primera; en 1940 se declararon los dividendos, y el Tesorero de Puerto Rico le notificó a la Porto Rico Telephone Co. una deficiencia por no haber retenido y pagado contribución sobre estos dividendos. Resolvimos que la corporación no residente que recibió ingresos *incluyendo dividendos* de otra corporación que derivó más del cincuenta (50) por ciento de su ingreso bruto de fuentes radicadas en Puerto Rico, estaba obligada a pagar contribución sobre el ingreso recibido por ella atribuible a Puerto Rico, menos los créditos y deducciones que fueren procedentes. En relación con las deducciones dispone la sección 32(b) que en el caso de una corporación extranjera las deducciones serán admitidas solamente en cuanto estén relacionadas con ingresos derivados de fuentes radicadas en Puerto Rico y que la distribución de las deducciones con respecto a fuentes radicadas en y fuera de la Isla será determinada mediante reglas y reglamentos prescritos por el Tesorero. A los fines de determinar el ingreso *neto tributable* cuando el ingreso procede de fuentes dentro y fuera de Puerto Rico, el artículo 197 del Reglamento dispone en cuanto al prorrateo de deducciones como sigue:

"De las partidas especificadas en los artículos 190 a 195 como derivadas específicamente de fuentes dentro y fuera de Puerto Rico [el artículo 191 se refiere a dividendos] serán deducidos los gastos, pérdidas y cualesquiera otras deducciones propiamente prorrateadas o asignadas a las mismas y una parte proporcional de cualesquiera otros gastos, pérdidas o deducciones que no puedan específicamente asignarse a partida o clase alguna de ingreso bruto. El remanente será incluido en su totalidad como ingreso de fuentes dentro de Puerto Rico. *La parte proporcional se basa en la proporción entre el ingreso bruto de fuentes dentro de Puerto Rico y el ingreso bruto total.*"

Finalmente, el artículo 199 de dicho Reglamento establece claramente que a menos que un contribuyente extranjero no

residente presente una declaración "fiel y exacta" (true and accurate) de los ingresos derivados de fuentes dentro de Puerto Rico, la contribución se cobrará sobre el ingreso bruto proveniente de fuentes locales. Esta sección se aplicó en el caso de *Porto Rico Telephone* v. *Secretario de Hacienda*, supra, y en apelación al Tribunal de Apelaciones del Primer Circuito, se dijo que "Como I.T.T. no presentó declaración alguna para el año contributivo 1940, parece claro que estaba sujeta al pago de una contribución de ingresos sobre los dividendos que recibió de la apelante en dicho año". *Porto Rico Telephone Co.* v. *Descartes*, 255 F.2d 169, 172 (1958).

██ No cabe duda alguna sobre el poder del Estado Libre para imponer una contribución de ingresos sobre dividendos declarados o pagados de ganancias derivadas de actividades y negocios realizados en Puerto Rico. *International Harvester Co.* v. *Wisconsin Dept. of Taxation*, 322 U.S. 435 (1944), en donde se sostuvo que un estado puede imponer contribuciones sobre beneficios realizados dentro de dicho estado y distribuido en forma de dividendos a los accionistas, ya que ha brindado protección y beneficios a las actividades corporativas de la entidad que ha producido las ganancias. Cf. *Freeman* v. *Secretario de Hacienda*, ante, pág. 307, resuelto en 24 de marzo de 1961. Claro está, no puede imponer contribución sobre beneficios o ganancias derivadas de fuentes localizadas fuera de los límites de su territorio, por no tener las propiedades y actividades que los engendran relación alguna con la protección, ventajas y oportunidades que otorga el estado. *Inter-American Orange Crush* v. *Srio. Hacienda*, 81 D.P.R. 293, 306 (1959); *P. R. Telephone Co.* v. *Secretario de Hacienda*, 79 D.P.R. 895 (1957); *Connecticut General Life Ins. Co.* v. *Johnson*, 303 U.S. 77 (1938). Todo cuanto se requiere para cumplir con los requisitos del debido procedimiento de ley es que exista un nexo suficiente entre el poder de imposición de contribuciones del estado y las actividades o sucesos sujetos a contribución, y que se satisface

determinando meramente si el estado ha ofrecido u otorgado beneficios, protección o ventajas. *Northerwestern States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450 (1959); *Miller Bros. Co.* v. *Maryland,* 347 U.S. 340 (1954); *West Publishing Co.* v. *McColgan,* 166 P.2d 861 (Cal. 1946) *confirmado* en 328 U.S. 823 (1946); *Curry* v. *McCanless,* 307 U.S. 357 (1939); *State Tax Commission* v. *Aldrich,* 316 U.S. 174 (1942); *Graves* v. *Schmidlapp,* 315 U.S. 657 (1942). Es por eso que cuando una corporación realiza negocios dentro y fuera de un territorio es permisible adoptar, a los fines de tributación, una fórmula para distribuir el ingreso y determinar la proporción del ingreso neto que es tributable en determinada jurisdicción, *Butler Bros.* v. *McColgan,* 315 U.S. 501 (1942); *Hans Rees' Sons* v. *State of North Carolina,* 283 U.S. 123 (1931); *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113 (1920), pero corresponde al contribuyente la carga (onus) de demostrar que la fórmula en su caso específico opera en forma tal que resulta en la tributación de ingresos extra-territoriales. *Crawford Mfg. Co.* v. *State Commissioner of Rev. & Tax,* 304 P.2d 504, 515 (Kan. 1956); *Butler Brothers* v. *McColgan,* supra; *Norfolk & W.R. Co.* v. *North Carolina,* 297 U.S. 682 (1936).

Un examen cuidadoso y detenido de los hechos envueltos en el presente caso nos lleva a la inevitable conclusión de que el dividendo que se declaró por Libby (West Indies) y se pagó a Libby (Maine) procedió *exclusivamente* de beneficios derivados de fuentes localizadas en Puerto Rico. Como cuestión de realidad, Libby (West Indies) realizó beneficios netos aquí en 1949 por la cantidad de $192,955.14, y después de pagar la contribución de ingresos en relación con sus actividades locales que montó a $55,034.30, acumuló beneficios sujetos a distribución por $137,920.84. De acuerdo con la presunción legal establecida por la sección 4(b) de la Ley de Contribuciones sobre Ingresos de 1925 la distribución de un dividendo por $100,000 se hizo de estos beneficios "más re-

cientemente acumulados". (⁸)    La contribuyente se ha limitado a alegar que la imposición de contribución sobre el dividendo total en efecto equivale a gravar beneficios que se obtuvieron de operaciones comerciales realizadas fuera de Puerto Rico.    Para establecer este hecho no se presentó prueba satisfactoria alguna, a no ser que pretendan descansar en el hecho estipulado de que durante el año 1949 "el total de negocios que hizo la compañía fuera de Puerto Rico era menos del veinte por ciento".    Este hecho por si solo no desvirtuaría la deducción de que el dividendo total provino de las actividades realizadas aquí.    Por otro lado, de la planilla presentada por la contribuyente surge claramente que *a*) la suma de $100,000, importe del dividendo declarado y pagado, se consignó como una "distribución total a accionistas cargada al sobrante acumulado durante el año contributivo"; *b*) que en todo caso, la cantidad distribuida como dividendo ($100,000) es inferior al total del beneficio neto acumulado durante el año en que se declaró y pagó dicho dividendo ($137,920.84) ; (⁹) y c) que para dicho año contributivo Libby (West Indies) tomó como deducción una partida de $33,080.57 por concepto de corretaje o comisiones (brokerage).    Como se recordará, la prueba demostró que los negocios reclamadamente hechos fuera de Puerto Rico se llevan a cabo a través de agentes en otros países.    Parece lógica la deducción de que estas transacciones se incluyeron como ventas en la declaración que se rindió en Puerto Rico y se reclamó como

---

    (⁸) La sección 4(b) dispone, en la parte pertinente, que "Para los fines de esta ley toda distribución [de dividendos] se hará de las utilidades o beneficios, hasta donde alcancen, y de las utilidades y beneficios más recientemente acumulados."

    (⁹) En *Lord Forres,* 25 B.T.A. 154 (1932) el contribuyente recibió dividendos de una corporación extranjera cuyo ingreso se derivaba en más de un cincuenta (50) por ciento de fuentes dentro de Estados Unidos. Estos beneficios se trasladaban a Inglaterra y se confundieron con otros ingresos corporativos provenientes de fuentes fuera de Estados Unidos; y luego se declararon los dividendos.    Se sostuvo que la contribución no era inconstitucional y se consideró especialmente que "los beneficios obtenidos de las propiedades en Estados Unidos eran más que suficientes para cubrir los dividendos declarados" (a la pág. 161).

gasto deducible el importe de las comisiones pagadas. Nuevamente correspondía a la apelante poner al juzgador en condiciones de aquilatar la prueba sobre este aspecto del caso, y no lo hizo. No puede quejarse ahora de las consecuencias de su omisión.

■■ En relación con la segunda impugnación por la contribuyente de la inconstitucionalidad de la sección 19 (a) (2) (b) al imponerse contribución sobre un dividendo declarado y pagado fuera de Puerto Rico, tampoco le asiste la razón. El poder de un estado para imponer contribuciones por transacciones que tienen lugar dentro del estado no está afectado por el hecho de que la imposición (exaction) de la contribución depende de sucesos que ocurren fuera del estado. *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 445 (1940). Lo fundamental es el *origen* del ingreso tributable, que se atribuye al lugar en donde están situados los bienes que rinden el dividendo o en donde la corporación desarrolla las actividades que culminan en la acumulación de beneficios que se distribuye como dividendo. El lugar en donde se recibe el ingreso no es necesariamente determinante en cuanto a la fuente del ingreso. Si así fuera bastaría con que el contribuyente requiriera que el pago del ingreso se le hiciera fuera de Puerto Rico para escapar a la tributación local, y en esta forma estaríamos permitiendo que éste decidiera personalmente la fuente de su ingreso sin considerar el sitio de su realización, *Ardbern Co.* v. *Commissioner of Internal Revenue*, 41 B.T.A. 910, 927 (1940), *modificado* en 120 F.2d 424 (C.C.A. 4, 1941); *Sabatini* v. *Commissioner of Internal Revenue*, 98 F.2d 753 (C.C.A. 2, 1938); cf. *Commissioner of Internal Revenue* v. *East Coast Oil Co.*, 85 F.2d 322 (C.C.A. 5, 1936), certiorari denegado 299 U.S. 608 (1936). Tal solución ha sido expresamente rechazada en el caso del pago de intereses. *Tonopah & T.R.Co.* v. *Commissioner*, 39 B.T.A. 1043 (1939) revocado por otros motivos 112 F.2d 970 (CCA 9, 1940); *Dexter* v. *Commissioner*, 47 B.T.A. 285 (1942).

En *Georday Enterprises, Ltd.* v. *Commissioner*, 126 F.2d 384 (C.C.A. 4, 1942) se resolvió que un dividendo recibido por una corporación extranjera (Canadá) de otra corporación extranjera y que procedía de beneficios y ganancias obtenidos por esta última en un plan de reorganización mediante el cual había adquirido todo el activo de una corporación de Delaware, constituía ingreso derivado de fuentes en Estados Unidos, *aun cuando las transacciones ocurrieron en Canada,* ya que el beneficio procedía en su origen de operaciones y actividades llevadas a cabo en Estados Unidos.

Además, adoptamos totalmente el razonamiento expuesto en la opinión dictada por el juez recurrido, quien acertadamente dice: "Hechos insustanciales en cuanto a la procedencia del ingreso que dependen de la voluntad o capricho de un contribuyente, tales como el estado o sitio que escoja para organizarse como corporación, o el sitio que se elija para celebrar una reunión de directores y declarar un dividendo, no pueden derrotar la facultad de Puerto Rico para cobrar una contribución, si por otra parte dicha contribución se ha impuesto y procede en ley. No debemos olvidar que el Presidente de la demandante manifestó que todos los cobros por ventas hechas se depositaban en un banco en Puerto Rico, el Royal Bank of Canada, y que según la prueba, la demandante no tenía otras fuentes de ingresos que no fueran sus ventas."

Por todo lo expuesto concluimos que según se aplica a los hechos y circunstancias del presente caso, la sección 19 (a) (2) (b) no es inconstitucional, y que *procede la confirmación de la sentencia apelada en todas sus partes.*

El Juez Asociado Sr. Santana Becerra no intervino.